**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

| | | |
|---|---|---|
| KARLA LYNCH, *individually and on behalf of all others similarly situated*, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 1:26-cv-00597 |
| | ) | |
| v. | ) | Honorable Byron B. Conway |
| | ) | |
| JEWELERS MUTUAL INSURANCE COMPANY, SI; and JM SPECIALITY INSURANCE COMPANY, | ) | **DEFENDANTS' BRIEF IN SUPPORT OF ITS MOTION TO DISMISS** |
| | ) | |
| Defendants. | ) | |

# TABLE OF CONTENTS

**Page**


INTRODUCTION ........ 1

STATEMENT OF FACTS ........ 4

ARGUMENT ........ 5

I. PLAINTIFF LACKS ARTICLE III STANDING ........ 5

A. Plaintiff's Alleged "Harms" Do Not Constitute a Concrete Injury Sufficient to Establish Article III Standing ........ 6

II. The Complaint Must Be Dismissed Pursuant to FRCP § 12(b)(6) ........ 12

A. Standard ........ 12

B. This Court Should Apply Wisconsin Law in Analyzing Plaintiff's Claims. ........ 13

C. Plaintiff Fails to State a Claim for Intrusion Upon Seclusion ........ 15

1. Plaintiff Does Not Allege Highly Offensive Conduct nor a Legitimate Privacy Interest Necessary for this Claim to Survive. ........ 15

2. Under Wisconsin Law, Plaintiff's Claim Also Fails for Failure to Plead Intrusion into an Actual "Place" that a Reasonable Person Would Consider Private. ........ 17

D. Plaintiff Fails to State a Valid Wiretap Claim ........ 18

1. Plaintiff's Interactions With the Website Do Not Constitute "Contents" of Communications ........ 19

2. Session Replay Software Is Not a Device. ........ 22

3. Plaintiff Has Not Alleged an Interception ........ 23

4. Given a Legitimate Conflict Between the Consent Portions of PWESCA and the Analogous Wisconsin Electronic Surveillance Control Law ("WESCL"), the Single-Party Consent Component of WESCL Should Apply Resulting in Dismissal of Plaintiff's Wiretapping Claim. ........ 25

CONCLUSION ........ 27

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adler v. Community.com*,
2021 WL 4805435 (C.D. Cal. Aug. 2, 2021)....................24

*Arndt v. Gov't Emps. Ins. Co.*,
750 F. Supp. 3d 518 (D. Md. 2024)....................3, 10

*In re Arthur J. Gallagher Data Breach Litig.*,
631 F. Supp. 3d 573 (N.D. Ill. 2022)....................7

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)....................12, 24

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
571 U.S. 49 (2013)....................13

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024)....................26

*Baysal v. Midvale Indem. Co.*,
78 F.4th 976 (7th Cir. 2023)....................7, 10

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)....................12

*Bogie v. Rosenberg*,
705 F.3d 603 (7th Cir. 2013)....................17

*In re BPS Direct, LLC*,
175 F.4th 423 (3d Cir. 2026)....................9, 11

*Brahm v. Hospital Sisters Health System,*
No. 23-CV-444-WMC, 2026 WL 1194751 (W.D. Wis. May 1, 2026)....................9

*Buckeridge v. University of Wisconsin Hospital & Clinics Authority UW Health*,
2019 WI App 39....................17

*By-Prod Corp. v. Armen-Berry Co.*,
668 F.2d 956 (7th Cir. 1982)....................26

*Cardoso v. Whirlpool Corp.*,
No. 21-CV-60784-WPD, 2021 WL 2820822 (S.D. Fla. July 6, 2021)....................23

*Cobbs v. PetMed Express, Inc.*,
No. 25-8045-CIV, 2026 WL 905375 (S.D. Fla. Jan. 14, 2026)....16

*Com. v. Hart*,
611 Pa. 531 (2011)....22

*Com. v. Proetto*,
2001 PA Super 95 (2001), *aff'd*, 575 Pa. 511 (2003)....23

*Commonwealth v. Byrd*,
235 A.3d 311 (Pa. 2020)....2

*Commonwealth v. Cole*,
2017 PA Super 211, 167 A.3d 49 (2017)....23

*Compare India Price v. Carnival Corp.*,
712 F. Supp. 3d 1347 (S.D. Cal. 2024)....11

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023), *aff'd as modified*, 148 F.4th 153 (3d Cir. 2025).... *passim*

*Dinerstein v. Google,*
73 F.4th 502 (7th Cir. 2023)....9

*Drinkwater v. Am. Fam. Mut. Ins. Co.*,
2006 WI 56....14

*Farst v. AutoZone, Inc.*,
700 F. Supp. 3d 222 (M.D. Pa. 2023)....16

*Finch v. Southside Lincoln-Mercury, Inc.*,
2004 WI App 110....15

*Finkelman v. Nat'l Football League*,
810 F.3d 187 (3d Cir. 2016)....24

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
528 U.S. 167 (2000)....5

*Giasson v. MRA – Management Association, Inc.*,
777 F. Supp. 3d 913 (E.D. Wis. 2025)....18

*Gilbert v. Lands' End, Inc.*,
No. 19-CV-1066-JDP, 2022 WL 2643514 (W.D. Wis. July 8, 2022), *aff'd*, 158 F.4th 839 (7th Cir. 2025)....13

*Goldstein v. Costco Wholesale Corp.*,
559 F. Supp. 3d 1318 (S.D. Fla. 2021) ....................19, 20

*Goldstein v. Luxottica of Am., Inc.*,
No. 21-80546-CIV, 2021 WL 4093295 (S.D. Fla. Aug. 23, 2021) ....................23

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) ....................26

*Sharp ex rel. Gordon v. Case Corp.*,
227 Wis. 2d 1 (1999) ....................13

*In re Grp. Health Plan Litig.*,
709 F. Supp. 3d 707 (D. Minn. 2023) ....................26

*Henderson v. State Farm Mut. Auto. Ins. Co*.,
59 Wis. 2d 451 (1973) ....................13

*Hillman v. Columbia County,*
164 Wis. 2d 376, 474 N.W.2d 913 (Ct. App. 1991) ....................17

*Jacome v. Spirit Airlines Inc.*,
No. 2021-000947-CA-01, 2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021) ....................3, 23

*State ex rel. Kalal v. Cir. Ct. for Dane Cnty*.,
2004 WI 58 ....................22

*Kurowski v. Rush Sys. for Health*,
683 F. Supp. 3d 836 (N.D. Ill. 2023) ....................4, 8, 13

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ....................5

*Mack v. Resurgent Cap. Servs., L.P.*,
70 F.4th 395 (7th Cir. 2023) ....................6

*Mason v. Machine Zone, Inc.*,
140 F. Supp. 3d 457 (D. Md. 2015) ....................22

*McCauley v. City of Chicago*,
671 F.3d 611 (7th Cir. 2011) ....................13

*Mikulsky v. Bloomingdale's, LLC*,
713 F. Supp. 3d 833 (S.D. Cal. 2024) ....................16

*Murphy v. Thomas Jefferson University Hospitals, Inc.*,
No. CV 22-4674, 2023 WL 7017734 (E.D. Pa. Oct. 10, 2023) ....................20

*Nabozny v. Optio Sols. LLC*,
84 F.4th 731 (7th Cir. 2023) ........................................................................................8

*Neinaber, et al v. Overlake Hospital Med. Ctr.*,
733 F.Supp.3d 1072 (W.D. Wash. May 13, 2024) ....................................................3

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016)..........................................................................................3

*Oregon Potato Co. v. Kerry Inc.*,
575 F. Supp. 3d 1064 (W.D. Wis. 2021) ....................................................................25

*Popa v. Harriet Carter Gifts, Inc.*,
426 F. Supp. 3d 108 (W.D. Pa. 2019)..........................................................................16

*Potter v. Havlicek*,
No. 3:06-CV-211, 2008 WL 2556723 (S.D. Ohio June 23, 2008)..........................................22

*In re Recalled Abbott Infant Formula Prods. Liab. Litig.*,
97 F.4th 525 (7th Cir. 2024) ........................................................................................6

*Remijas v. Neiman Marcus Grp., LLC*,
794 F.3d 688 (7th Cir. 2015) ........................................................................................7

*Rodriguez v. Google, LLC*,
No. 20-CV-04688-RS, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022)......................................24

*Silha v. ACT, Inc.*,
807 F.3d 169 (7th Cir. 2015) ....................................................................................5, 8

*Sims v. Humane Soc. of St. Joseph Cnty. Indiana Inc.*,
758 F. Supp. 2d 737 (N.D. Ind. 2010) ........................................................................8

*Sisti v. Bosley Inc.*,
No. 2:25-CV-10669-JFW-DFM, 2026 WL 1223927 (C.D. Cal. Apr. 27, 2026) ....................24

*Smith v. Loyola Univ. Med. Ctr.*,
No. 23 CV 15828, 2024 WL 3338941 (N.D. Ill. July 9, 2024) ...............................................11

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)......................................................................................................6

*Story as Tr. for Story v. Marquette Univ.*,
728 F. Supp. 3d 948 (E.D. Wis. 2024)..........................................................................14

*Swanson v. Citibank, N.A.*,
614 F.3d 400 (7th Cir. 2010) ......................................................................................12

*T.D. v. Piedmont Healthcare, Inc.*,
No. 1:23-CV-5416-TWT, 2024 WL 3972984 (N.D. Ga. Aug. 28, 2024), *reconsideration denied*, No. 1:23-CV-5416-TWT, 2024 WL 5284883 (N.D. Ga. Dec. 10, 2024), *and appeal dismissed*, No. 25-10105-JJ, 2025 WL 1894802 (11th Cir. May 9, 2025), *and appeal dismissed*, No. 25-10105-JJ, 2025 WL 1894802 (11th Cir. May 9, 2025) .....7

*Tagouma v. Investigative Consultant Servs., Inc.*,
2010 PA Super 147, 4 (2010) .....15

*Taylor v. McCament*,
875 F.3d 849 (7th Cir. 2017) .....6

*In re TikTok, Inc. In-App Browser Priv. Litig.*,
No. 24 C 2110, 2024 WL 4367849 (N.D. Ill. Oct. 1, 2024) .....20

*Torres v. Prudential Financial, Inc.*,
2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) .....24

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .....6, 8

*Uebelacker v. Rock Energy Cooperative*,
2025 WI App 23 .....17

*United States v. Szymuszkiewicz*,
622 F.3d 701 (7th Cir. 2010) .....24

*Vasil v. Kiip, Inc.*,
No. 16-CV-09937, 2018 WL 1156328 (N.D. Ill. Mar. 5, 2018) .....19

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .....4, 20

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .....19, 20

**Constitutions**

U.S. Const. art. III ..... *passim*

**Statutes**

18 Pa. Stat. and Cons. Stat. Ann. § 5702 .....19, 22, 23

Wis. Stat. Ann. § 968.31(2)(c) .....26

Wis. Stat. Ann. § 968.31(a)-(e) .....25

Wis. Stat. Ann. § 968.31(c)....25

Wis. Stat. Ann. § 995.50....15, 17, 18

**Rules**

Fed. R.Civ. P. § 12(b)(1)....4, 6, 12

Fed. R. Civ. P. § 12(b)(6)....4, 12

**Other Authorities**

Restatement (Second) of Torts § 652....15

Restatement (Second) of Torts § 652B....15

## INTRODUCTION

Plaintiffs class-action Complaint is yet another in the deluge of actions brought across the country attempting to impose extraordinary and unfounded liability on defendants based on allegations that Plaintiff's **voluntary** access and use of **public facing** websites was encroached upon by third-party "trackers" on those websites. Here, Plaintiff attempts to allege an invasion of privacy claim and a wiretapping claim based on the use of commonplace analytics and session replay providers, Mixpanel and New Relic (collectively "Code Vendors"), on Defendants' website, www.jewelersmutual.com (the "Website"). Karla Lynch ("Plaintiff") alleges that Defendants, Jewelers Mutual Insurance Company, SI and JM Specialty Insurance Company (collectively, "Defendants"), collected innocuous information concerning a generic user's visits to the Website, including the pages viewed, URLs visited, clicks, scrolling activity, and text entered into forms and that this constituted an invasion of privacy and wiretapping. What Plaintiff does not allege factually in the Complaint, however, is most telling:

- Plaintiff does not allege that she entered any Personally Identifiable Information ("PII") at any time during her use of the Website. Not her contact information, payment information or anything identifying her—nothing to distinguish her from any other anonymous Website user.
- Plaintiff does not allege that the Code Vendors actually identified her, relying instead *only* on unsubstantiated claims about what they might do.
- Plaintiff does not allege that *Defendants did anything* to attempt to discover who she was upon her use of the Website.
- Plaintiff does not allege any concrete actual injury or damages suffered as a result of the Code Vendors.

Indeed, as addressed in more detail below, both of Plaintiff's legal claims fail as a matter of law.

*First,* Plaintiff lacks Article III standing because she does not plausibly allege that she suffered a concrete injury. Plaintiff's claims imply that the Code Vendors captured information concerning her interactions with the Website and that, as a result, she suffered emotional distress,

lost the economic value of her information, and conferred an improper benefit on Defendants. As recognized by Courts across the country, those alleged harms do not constitute concrete injuries sufficient to invoke federal jurisdiction. Further, Plaintiff's allegations do not give rise to a substantial privacy injury analogous to the common-law torts of public disclosure of private facts or intrusion upon seclusion. Plaintiff does not allege that anyone actually identified her or actually obtained PII concerning her. Accordingly, for at least these reasons, Plaintiff fails to establish Article III standing.

*Second*, Plaintiff's invasion of privacy claim fails (whether it is governed by Pennsylvania law or Wisconsin law) because there is no highly offensive conduct nor legitimate privacy interest alleged; requirements under both Wisconsin law and Pennsylvania law. Moreover, under applicable Wisconsin law, Plaintiff does not allege an intrusion into a protected place; a necessary element of that claim.

*Third*, Plaintiff fails to state a valid statutory wiretap claim. Plaintiff does not plausibly allege the interception of the contents of any communication. Plaintiff's wiretap theory rests primarily on allegations concerning page views, URLs, clicks, and scrolling activity—information courts consistently recognize as record information rather than the substance or meaning of a communication. To the extent Plaintiff alleges that third-party technologies captured text entered into forms, those allegations are entirely conclusory because Plaintiff does not allege that she entered information into the Website or identify any search term or form submission that was intercepted. Moreover, Plaintiff fails to plausibly allege the use of a qualifying device or a contemporaneous interception; and it is undisputed that Defendants as a party to the communication consented to the conduct alleged. *See e.g., Commonwealth v. Byrd*, 235 A.3d 311, 319 (Pa. 2020) (consent as an exception to wiretapping can be demonstrated when a person knew

or should have known they were being recorded); *In re Nickelodeon Consumer Priv. Litig*., 827 F.3d 262, 266 (3d Cir. 2016) ("[m]ost of us understand that what we do on the Internet is not completely private," and "recognize, even if only intuitively, that our data . . . feed[s] an entire system of trackers, cookies, and algorithms designed to capture and monetize the information we generate.")

*Finally*, Courts around the country, including those analyzing the Pennsylvania Wiretapping and Electronic Surveillance Control Act ("PWESCA"), have routinely dismissed similar cases, and this court should follow form. *See e.g., Cook v. GameStop, Inc.,* 689 F. Supp. 3d 58, 61 (W.D. Pa. 2023), *aff'd as modified*, 148 F.4th 153 (3d Cir. 2025) (dismissing plaintiff's claim under the Pennsylvania's wiretap statute because plaintiff's mouse movements, clicks, URLs, and unspecified keystrokes do not plausibly constitute the "contents" of a communication); *Neinaber, et al v. Overlake Hospital Med. Ctr.,* 733 F.Supp.3d 1072 (W.D. Wash. May 13, 2024) (dismissing pixel website tracking claims finding plaintiffs had not plead sufficient and necessary elements of various common law and statutory causes of action—highlighting the lack of sufficient damages pled and the voluntary nature of plaintiff's conduct as barring plaintiff's claims); *Arndt v. Gov't Emps. Ins. Co.,* 750 F. Supp. 3d 518, 528 (D. Md. 2024) (dismissing pixel tracking lawsuit for lack of concrete injury based on defendant's alleged collection of mere website activity, such as mouse movements, keystrokes and clicks, search terms, or content viewed by plaintiff on defendant's website because "[s]uch information does not convey any personal, private, or identifying information" and this information is "comparable to that which would reflect 'public shopping behavior in the real world'"); *Jacome v. Spirit Airlines Inc.,* No. 2021-000947-CA-01, 2021 WL 3087860, at *5 (Fla. Cir. Ct. June 17, 2021) (concluding that plaintiff failed to state a claim under Florida's wiretap statute because session replay software does not constitute an

"electronic, mechanical, or other device" within the meaning of the statute); *Kurowski v. Rush Sys. for Health,* 683 F. Supp. 3d 836, 844 (N.D. Ill. 2023) (dismissing wiretapping claim finding that, "[t]he type of metadata that [plaintiff] alleges was transmitted via third-party source code does not in the least bit fit into [the PHI] category."); *Yoon v. Lululemon USA, Inc.,* 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (plaintiff failed to state a claim under California Invasion of Privacy Act because keystrokes, mouse clicks, pages viewed, and shipping and billing information are not contents of a communication).

For these reasons, Plaintiff's Complaint should be dismissed.

## STATEMENT OF FACTS

Defendants operate the Website. *See* Plaintiff's Complaint ("Compl.") ¶ 12.[1] According to the Complaint, Defendants embedded a Javascript code provided by the Code Vendors, Mixpanel and New Relic, on its Website (the "Code"). *See id*. ¶¶ 2-3. Mixpanel is a web analytics platform that allows companies to analyze how and why users engage with website content. *See id*. ¶ 16. New Relic provides session replay technology that is capable of permitting the user's browsing session to be replayed after the fact. *See id*. ¶ 25.

Plaintiff, a Pennsylvania resident, alleges that she visited the Website while located in Pennsylvania. *See id*. ¶ 9, 52. Plaintiff alleges that the Code Vendors collected and intercepted users' electronic communications with the Website, including page views, the URLs of the web pages visited, where a generic user clicks and scrolls, and the text a generic user inputs on the Website, whether or not the generic user actually submits the information. *See id*. ¶¶ 2, 20-22, 28-32. Moreover, Plaintiff asserts that Mixpanel is capable of identifying a generic user by gathering information such as cookies, IP addresses, email addresses, device information, location

[1] The allegations in Plaintiff's Complaint are assumed true for purposes of Defendants' motion to dismiss only. Defendants reserve all rights to challenge Plaintiff's factual allegations and legal theories.

information, and other unspecified "unique identifiers." ¶ 20. Plaintiff claims that, after visiting the Website, she began receiving advertisements related to Jewelers Mutual and similar products. *See id.* ¶¶ 54-55.

The Complaint does not allege that Plaintiff provided, or that the Code Vendors intercepted, personal information such as her name, address, telephone number, or payment information. Nor does the Complaint allege that the Code Vendors identified Plaintiff or linked any intercepted information to her. Although the Complaint generally alleges that the Code captures search terms, text entries, and form submissions, Plaintiff does not allege that she entered any text, conducted any search, or submitted any form through the Website, and Plaintiff does not identify any particular communication allegedly intercepted. Instead, Plaintiff relies primarily on generalized allegations concerning the capabilities of the Code Vendors and screenshots purportedly depicting information collected from an unidentified Website visitor. *See id.* ¶¶ 4, 20-21, 28, 61-63.

Relying on these allegations, Plaintiff asserts two causes of action against Defendants for violation of PWESCA and invasion of privacy – intrusion upon seclusion. *See id.* ¶¶ 79-108. Plaintiff seeks to represent a class of Pennsylvania citizens who visited the Website and rejected cookies while the Code was embedded on the Website. *See id*. ¶ 68.

## ARGUMENT

### I. PLAINTIFF LACKS ARTICLE III STANDING

"Article III of the Constitution limits federal judicial power to certain 'cases' and controversies' and the 'irreducible constitutional minimum' of standing contains three elements." *Silha v. ACT, Inc*., 807 F.3d 169, 173 (7th Cir. 2015) (*quoting Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-60 (1992)). The three elements are: (1) an injury in fact; (2) causation; and (3) redressability. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 168

(2000). "To establish an injury in fact, a plaintiff must show that he or she suffered an 'invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Mack v. Resurgent Cap. Servs., L.P.*, 70 F.4th 395, 403 (7th Cir. 2023) (*quoting Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)). "Concrete" means the injury must be real and not abstract. *See id.* Tangible harms, like physical and monetary harms, "readily qualify as concrete." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021). Intangible harms may also be concrete, for example, "reputational harms, disclosure of private information, and intrusion upon seclusion." *See id.* at 425. To determine if an injury is concrete, it is instructive for a court to consider whether an alleged intangible harm has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit. *See id.* A Plaintiff cannot claim "a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Spokeo*, 578 U.S. at 342 (2016).

Plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing the elements of Article III standing. *See In re Recalled Abbott Infant Formula Prods. Liab. Litig.*, 97 F.4th 525, 528 (7th Cir. 2024). Where a plaintiff lacks standing to maintain a claim in federal court, the complaint must be dismissed pursuant to FRCP § 12(b)(1) for lack of subject matter jurisdiction. *Taylor v. McCament*, 875 F.3d 849, 855 (7th Cir. 2017).

### A. Plaintiff's Alleged "Harms" Do Not Constitute a Concrete Injury Sufficient to Establish Article III Standing

In the Complaint, Plaintiff alleges that Defendants procured the interception of her communications and invaded her privacy which caused her mental anguish, emotional distress, worry, and fear; deprived her of the economic value of her personal information and website interactions; and provided an improper benefit to Defendants. *See* Compl. ¶¶ 94, 101-106. She also alleges only generally the receipt of so called, "targeted advertisements"—but does not explain

how these injured her, nor does she allege them in her actual causes of action. *Id*. at ¶¶ 54, 79-108. Further, Plaintiff alleges she is entitled to statutory damages, punitive damages, and reasonable attorney's fees. *See id.*

All of these "injuries" are insufficient to establish standing as a matter of law. As the Seventh Circuit held in *Baysal v. Midvale Indem. Co.*, allegations of worry and fear do not constitute concrete injuries because if they did, "almost everyone could litigate about almost anything." 78 F.4th 976, 977-78 (7th Cir. 2023). Nor can Plaintiff establish standing based on the alleged loss of the economic value of her information or Website interactions. Courts in the Seventh Circuit have repeatedly rejected the proposition that personal identifiable information possesses an independent monetary value sufficient to constitute a concrete injury. *See Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 695 (7th Cir. 2015)*; In re Arthur J. Gallagher Data Breach Litig*., 631 F. Supp. 3d 573, 592 (N.D. Ill. 2022). Similarly, her threadbare allegations about so called "targeted advertisements" are unavailing given she does not explain how these are at all injurious. *See T.D. v. Piedmont Healthcare, Inc.*, No. 1:23-CV-5416-TWT, 2024 WL 3972984, at *3 (N.D. Ga. Aug. 28, 2024), *reconsideration denied*, No. 1:23-CV-5416-TWT, 2024 WL 5284883 (N.D. Ga. Dec. 10, 2024), *and appeal dismissed*, No. 25-10105-JJ, 2025 WL 1894802 (11th Cir. May 9, 2025), *and appeal dismissed*, No. 25-10105-JJ, 2025 WL 1894802 (11th Cir. May 9, 2025) (Rejecting targeted ads as damages finding that, "No facts are alleged that would explain how receiving targeted advertisements . . . would plausibly cause any of the Plaintiffs to suffer . . . damages.").[2] Likewise, Plaintiff cannot establish standing based on

[2] Although Plaintiff claims she observed advertisements for Defendants' products on Facebook, she does not allege facts connecting those advertisements to the information allegedly collected through the Website. Even if these advertisements were somehow deemed to be concrete "injuries," which they are not, given the pervasive nature of the internet, it is just as likely that these advertisements resulted from some other conduct by Plaintiff on the internet than from her anonymous interaction with the Website. Accordingly, Plaintiff has not alleged facts demonstrating that these targeted ads are fairly traceable to Defendants' conduct.

Defendants' alleged "profit" from her information because standing must be based on a plaintiff's loss, not a defendant's gain. *See Silha v. ACT, Inc.*, 807 F.3d 169, 175 (7th Cir. 2015).

The only remaining "injuries" that Plaintiff alleges are the purported interception of her "confidential communications" and "personal identifiable information" through the specific details of her use of the public facing Website. Pursuant to the Supreme Court's holding in *Transunion*, Plaintiff needs this Court to find that such conduct bears a close relationship to traditionally recognized privacy torts in order for standing to exist. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). This Court, however, should decline to make that finding and join the other courts across the country that have appropriately held that conduct such as that alleged in this Complaint does not bear such relationship and simply does not give rise to standing in website tracking cases.

*First*, Plaintiff does not plausibly allege that Defendants publicly disclosed her information, as is required to resemble the tort of public disclosure of private facts. "The public-disclosure form of the privacy tort protects against the humiliation that accompanies the disclosure of sensitive or scandalizing private information to public scrutiny." *Nabozny v. Optio Sols. LLC*, 84 F.4th 731, 736 (7th Cir. 2023). It does not include just any communication by defendant to a third person but requires that "the matter be 'made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.'" *Nabozny*, 84 F. 4th 731 at 735. "A communication made to a single person or to a small group of people is not actionable because the publicity element requires communication to the public at large." *Sims v. Humane Soc. of St. Joseph Cnty. Indiana Inc.*, 758 F. Supp. 2d 737, 748 (N.D. Ind. 2010); *see also Nabozny*, 84 F. 4th 731 (no standing where defendant disclosed plaintiff's financial information to a single third-party mail vendor); *Kurowski v. Rush Sys. for*

*Health*, 683 F. Supp. 3d 836, 849 (N.D. Ill. 2023) (determining plaintiff failed to satisfy the publicity element where defendant disclosed plaintiff's information only to three private businesses). Here, Plaintiff's allegations that Defendant disclosed her communications on the Website to Mixpanel and New Relic (i.e. the two Code Vendors) do not satisfy the publicity element required for the tort of public disclosure of private facts. The alleged communications were made to only two private entities, and Plaintiff does not allege that the Code Vendors publicly disclosed her information.

*Second*, Plaintiff does not plausibly allege that the Code Vendors identified her from the intercepted information, an element logically necessary to establish a common law tort of public disclosure of private facts. In *Dinerstein v. Google*, a pixel tracking lawsuit, the Seventh Circuit held that a plaintiff lacked standing where he alleged only that Google received his anonymized medical records but did not allege that Google actually used the disclosed information to identify him. *See* 73 F.4th 502, 515-516 (7th Cir. 2023). The Court explained that absent the ability to identify the plaintiff, "there can be no communication and hence no publicity." *Id.* at 514. Likewise, in *Brahm v. Hospital Sisters Health System*, a very recent decision from the Western District of Wisconsin, the court acknowledged the difficulty in plaintiffs' ability to establish standing in website tracking cases and held that plaintiffs lacked standing where they alleged that Google Analytics received IP addresses, cookies, browser fingerprints, and URLs reflecting their activity on defendants' websites, but failed to show that Google *actually identified them*. *See* No. 23-CV-444-WMC, 2026 WL 1194751, at *7-8 (W.D. Wis. May 1, 2026). Allegations that Google possessed the capability to identify users were held insufficient absent evidence that Google actually connected the intercepted information to the plaintiffs' identities. *Id*; *see also In re BPS Direct, LLC*, 175 F.4th 423, 428–33 (3d Cir. 2026) (dismissing pixel tracking case for lack of

standing where no actual sensitive PII was alleged to have been at issue).

Here, Plaintiff alleges that Mixpanel collects information such as cookies, IP addresses, email addresses, device and operating system information, and location information. Compl. ¶ 20. Plaintiff does not allege that she entered any personally identifying information while interacting with the Website—"not her name. Not her address. Not her credit card information. Nothing that could connect her browsing activity to her." *Cook v. GameStop, Inc*., 689 F. Supp. 3d 58, 65 (W.D. Pa. 2023). Further, she does not allege that the Code Vendors identified her or connected the intercepted information to her identity through the information collected. In effect, everything she was doing on the Website was anonymous. Under *Dinerstein* and *Brahm*, that is insufficient to establish a concrete injury.

*Third*, Plaintiff cannot establish a concrete injury because the information allegedly intercepted is not the type of highly sensitive information protected by the common law tort of public disclosure of private facts. Plaintiff alleges only the interception of her clicks, scrolling, mouse movements, and keystrokes on the Website. She does not allege that those interactions disclosed any medical, financial, or other intimate personal information that could give rise to a privacy tort. *See Baysal v. Midvale Indemnity Co.*, 78 F.4th 976, 980–82 (7th Cir. 2023) (holding that disclosure of a driver's license number did not constitute a concrete injury because it was not the type of private or embarrassing information protected by the common law privacy torts*); Arndt v. Gov't Emps. Ins. Co.*, 750 F. Supp. 3d 518, 529 (D. Md. 2024) (dismissing wiretapping claims for lack of standing where session replay software captured basic contact information, marital status, vehicle history, and other insurance-related data, concluding that such information is routinely provided to insurers and is not highly sensitive). Where Courts are finding standing in these cases, definitive sensitive information in the form of PII or Protected Health Information

(“PHI”) is actually at issue. Such is not the case here. *Compare India Price v. Carnival Corp.*, 712 F. Supp. 3d 1347, 1354 (S.D. Cal. 2024) (finding standing where plaintiff alleged that software actually intercepted sensitive personal information, including passport and credit card numbers); *Smith v. Loyola Univ. Med. Ctr.*, No. 23 CV 15828, 2024 WL 3338941, at *4 (N.D. Ill. July 9, 2024) (finding a concrete injury where actual PHI was alleged to have been at issue).

The Third Circuit’s decision in *In re BPS Direct, LLC* is particularly instructive. There, several plaintiffs alleged that session replay software intercepted their mouse movements, clicks, scrolls, and search terms while browsing defendants' websites. *See* 175 F.4th 423, 428–33 (3d Cir. 2026). The Court held that plaintiffs failed to establish a concrete injury because they alleged only the interception of routine browsing activity, which it described as "no more private than the physical browsing countless shoppers do daily in defendants' brick-and-mortar stores." *Id.* The Court distinguished plaintiffs who alleged the interception of their credit and debit card numbers as plausibly alleging a concrete injury because the disclosure of such financial information implicated privacy interests historically protected at common law. *Id.*

Here, Plaintiff does not allege that she entered any sensitive information through the Website, such as credit card or billing information, or that her browsing activity revealed medical or other highly sensitive personal information. Rather, the Complaint alleges only that Plaintiff browsed Defendant's jewelry insurance website and that the Code Vendors intercepted information concerning only that browsing activity. Browsing pages relating to jewelry insurance is no more private than the browsing activity at issue in *In re BPS Direct* (i.e., “the physical browsing countless shoppers do daily in defendants’ brick-and-mortar stores”) and does not implicate the type of privacy interests historically protected at common law. Accordingly, Plaintiff fails to allege a concrete injury analogous to a privacy tort.

Plaintiff lacks Article III standing to bring this Complaint because she has not suffered a concrete injury. This Court should dismiss the Complaint pursuant to FRCP § 12(b)(1).

## II. THE COMPLAINT MUST BE DISMISSED PURSUANT TO FRCP § 12(B)(6)

The Complaint also fails to state a claim upon which relief can be granted. As discussed below, Plaintiff cannot state a claim for intrusion upon seclusion under either Wisconsin or Pennsylvania law. Further, Plaintiff's wiretap claim fails because Plaintiff does not plausibly establish that "contents of a communication" were intercepted, or that a "device" existed, or that "interception" required for a wiretapping claim even occurred.

### A. Standard

A §12(b)(6) motion to dismiss "tests the legal sufficiency of the complaint. "*Breneisen v. Countryside Chevrolet/Buick/GMC, Inc.*, 573 F. Supp. 3d 1328, 1330 (E.D. Wis. 2021). A complaint must be dismissed pursuant to Rule 12(b)(6) where the plaintiff fails to allege sufficient facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 697, 129 S. Ct. 1937, 1960, 173 L. Ed. 2d 868 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1959, 167 L. Ed. 2d 929 (2007). In other words, "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010),

To survive a motion to dismiss, a plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." "The plaintiff must provide 'some specific facts to support the legal claims asserted' and cannot rely on

conclusory allegations to make his claim." *Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 841 (N.D. Ill. 2023) (quoting *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

### B. This Court Should Apply Wisconsin Law in Analyzing Plaintiff's Claims.

Plaintiff asserts two claims, both purportedly under Pennsylvania law: a violation of PWESCA and intrusion upon seclusion. In determining which law governs a claim, however, "[a] federal court sitting in diversity ordinarily must follow the choice-of-law rules of the State in which it sits." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 65 (2013). This rule applies equally to actions brought under the Class Action Fairness Act ("CAFA"), as is the case here, because CAFA jurisdiction is a form of diversity jurisdiction. *See Gilbert v. Lands' End, Inc.*, No. 19-CV-1066-JDP, 2022 WL 2643514, at *2 (W.D. Wis. July 8, 2022), *aff'd*, 158 F.4th 839 (7th Cir. 2025). Thus, Wisconsin's choice of law rules apply to determine which state's law governs Plaintiffs claims.

The first "threshold determination in a conflict of laws case is whether a genuine conflict exists between Wisconsin law and the law of another state." *Sharp ex rel. Gordon v. Case Corp.,* 227 Wis. 2d 1, 10 (1999). And if the laws of Wisconsin and the other state are the same, the Court must apply Wisconsin law. *Id. Henderson v. State Farm Mut. Auto. Ins. Co*., 59 Wis. 2d 451, 454 (1973) ("Before a conflict-of-laws problem is presented, it must appear that the ultimate selection of law will affect the outcome"). As discussed in further detail below, under either Wisconsin or Pennsylvania law the outcome is the same—Plaintiff cannot prevail on either of her claims based on the conduct alleged in the Complaint regardless of which state's law applies.

To the extent this Court determines that a conflict between law exists, however, then the Court should look to the second prong of the choice of law analysis—whether the nonforum contacts are of the greater significance. If more than minimal nonforum contacts exists and it is unclear that the nonforum contacts are of greater significance, then the Court must look to the third

prong of the choice of law analysis—the five-factor test discussed below.

As to the second prong of the choice of law analysis, Wisconsin law presumptively applies "unless it becomes clear that nonforum contacts are of greater significance." *Drinkwater v. Am. Fam. Mut. Ins. Co.*, 2006 WI 56, ¶ 40. In determining which state has more significant contacts, the Court considers "where the injury occurred, where the conduct causing the injury occurred, the residence of the parties, and the place where the relationship between the parties is centered." *Story as Tr. for Story v. Marquette Univ*., 728 F. Supp. 3d 948, 954 (E.D. Wis. 2024).

Those contacts favor Wisconsin. Defendants are incorporated in Wisconsin, and their principal places of business are in Neenah, Wisconsin. Defendants operate the Website from Wisconsin. *See* Compl. ¶¶ 10-12. Although Plaintiff alleges that she accessed the Website from Pennsylvania, the alleged conduct giving rise to her alleged injuries originated from the operation of the Website in Wisconsin.

Nonetheless, even if the Court does not conclude that it is clear that contacts favor Wisconsin and it applies the third prong of the choice of law analysis, the application of Wisconsin law is appropriate because each of the choice-influencing factors in this five-factor test weigh in favor of Wisconsin. These factors include: the predictability of results, maintenance of interstate and international order, simplification of the judicial task, advancement of the forum's governmental interest, and application of the better rule of law. *See Drinkwater*, 2006 WI at ¶ 40.

The first factor, predictability of results, favors Wisconsin law. Both Defendants are headquartered in Wisconsin and operate their businesses and the Website from Wisconsin. Defendants would reasonably expect that the consequences of their operation of the Website would be governed by Wisconsin law, particularly since Plaintiff brought this action in Wisconsin. The second factor, examination of the states' respective governmental interests, also weighs in favor of

Wisconsin. While Pennsylvania may have an interest in protecting its residents from alleged invasions of privacy, this interest should not extend to matters that occur outside of Pennsylvania.

The next two factors also favor Wisconsin. The third factor, which considers which state's law will simplify the Court's judicial task, also favors Wisconsin law. This Court deals with Wisconsin law far more frequently than Pennsylvania law. *Finch v. Southside Lincoln-Mercury, Inc*., 2004 WI App 110, ¶ 30. Further, Wisconsin clearly has a stronger interest in regulating the conduct of corporations that operate their businesses within Wisconsin, rather than protecting the interests of plaintiffs who reside outside of its state therefore Wisconsin law is the better law to apply.

In sum, the choice of law factors weigh in favor of the application of Wisconsin law. Accordingly, this Court must apply Wisconsin law to Plaintiff's claims, even while the application of either law will result in dismissal of Plaintiff's case.[3]

### C. Plaintiff Fails to State a Claim for Intrusion Upon Seclusion

#### 1. Plaintiff Does Not Allege Highly Offensive Conduct nor a Legitimate Privacy Interest Necessary for this Claim to Survive.

Plaintiff cannot establish that Defendants' alleged conduct was highly offensive to a reasonable person, which is required to state a claim under both Wisconsin law and Pennsylvania law. *See* Wis. Stat. Ann. § 995.50 (codifying the elements of an intrusion upon seclusion claim); *Tagouma v. Investigative Consultant Servs*., Inc., 2010 PA Super 147, 4 (2010) (*quoting* Restatement (Second) of torts § 652) (Reinforcing that Pennsylvania follows Section 652B of the Restatement (Second) of Torts, which provides that "one who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to

[3] Defendant addresses both Wisconsin and Pennsylvania law herein in an abundance of caution.

liability to the other for invasion of his privacy, ***if the intrusion would be highly offensive to a reasonable person***.") (emphasis added).

As discussed in Section I *supra*, courts addressing claims arising from website tracking technologies have repeatedly concluded that the alleged collection of browsing activity, such as keystrokes, search terms, and clicks do not establish the existence of any injury-in-fact, because such activities alone do not involve sensitive private information. Moreover, courts looking at invasion of privacy claims based on website tracking have also consistently found such information is also not sufficiently offensive to a reasonable person. *See Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 846 (S.D. Cal. 2024) (holding that plaintiff failed to state a claim for intrusion upon seclusion because plaintiff does not have a privacy interest in browsing data on defendant's website); *Farst v. AutoZone, Inc*., 700 F. Supp. 3d 222, 229 (M.D. Pa. 2023) (determining that the alleged recording of plaintiff's mouse clicks, keystrokes, search terms, page views, scroll movements, and copy-and-paste actions while browsing defendant's website was not the type of highly offensive conduct necessary to support a claim for intrusion upon seclusion); *Cobbs v. PetMed Express, Inc.*, No. 25-8045-CIV, 2026 WL 905375, at *11 (S.D. Fla. Jan. 14, 2026) (concluding that the alleged collection of pet-related information, keystrokes, links, and form entries through cookies on a commercial website was not sufficiently highly offensive to support an intrusion upon seclusion claim because such tracking is widespread and does not resemble the invasions of privacy historically recognized at common law); *Popa v. Harriet Carter Gifts, Inc.,* 426 F. Supp. 3d 108, 122–23 (W.D. Pa. 2019) (holding that the collection of plaintiff's keystrokes, mouse clicks, name, residential address, and email address through website tracking technology was not sufficiently highly offensive to state a claim for intrusion upon seclusion).

Here, Plaintiff alleges only that the Code Vendors intercepted generic users' page views, where a generic user clicks and scrolls, and the text a generic user inputs on the Website. Accordingly, Plaintiff fails to plausibly allege a legitimate privacy interest or conduct that is highly offensive to a reasonable person, and her claim should be dismissed with prejudice.

2. Under Wisconsin Law, Plaintiff's Claim Also Fails for Failure to Plead Intrusion into an Actual "Place" that a Reasonable Person Would Consider Private.

Wisconsin's intrusion upon seclusion claim is codified in Wis. Stat. Ann. § 995.50, which provides that one who intrudes "upon the privacy of another of a nature highly offensive to a reasonable person . . . in a place that a reasonable person would consider private, or in a manner that is actionable for trespass" is subject to liability. Wis. Stat. Ann. § 995.50. Thus, to prevail on a claim for intrusion upon seclusion, a plaintiff must establish two elements: (1) that the defendant intruded upon the plaintiff's privacy in a place that a reasonable person would consider private, or in a manner actionable for trespass; and (2) that the intrusion was of a nature highly offensive to a reasonable person. *Bogie v. Rosenberg*, 705 F.3d 603, 610 (7th Cir. 2013) (analyzing Wisconsin law).

In *Hillman v. Columbia County*, the Wisconsin Court of Appeals held that the term "place" refers to a geographical location. *See* 164 Wis. 2d 376, 392, 474 N.W.2d 913, 919 (Ct. App. 1991). Because the term is geographical, the court concluded that an inmate failed to state an intrusion upon seclusion claim based on allegations that jail employees accessed his medical records because a file containing medical records is not a "place" within the meaning of the tort. *See id.* This geographical limitation has been applied in subsequent cases involving electronic records and digital communications. *See, for e.g., Buckeridge v. University of Wisconsin Hospital & Clinics Authority UW Health*, 2019 WI App 39, ¶ 13 (holding that medical records stored on a computer system do not constitute a "place" sufficient to assert a claim for intrusion upon seclusion);

*Uebelacker v. Rock Energy Cooperative*, 2025 WI App 23, ¶ 14 (rejecting plaintiff's claim that her employer was liable for intrusion upon seclusion when her IT manager viewed her Facebook Messenger conversation because digital communications do not constitute a protected "place" under the statute); *Giasson v. MRA – Management Association, Inc.*, 777 F. Supp. 3d 913, 937 (E.D. Wis. 2025) (dismissing intrusion upon seclusion claim arising from a data breach that resulted in the exposure of plaintiff's personally identifiable information, including her Social Security number, medical information, and financial account information, because plaintiff failed to allege an intrusion in a protected place).

Here, Plaintiff's interactions on the Website does not involve an intrusion into a protected "place" within the meaning of Wis. Stat. Ann. § 995.50. The public facing Website is not a geographical place that a reasonable person would consider private, and the alleged communications intercepted by the Code Vendors are no more a protected "place" than the Facebook Messenger communications in *Uebelacker* or the personal information exposed in *Giasson*. Accordingly, Plaintiff cannot state a claim for intrusion upon seclusion under Wisconsin law and this claim should be dismissed with prejudice.

**D. Plaintiff Fails to State a Valid Wiretap Claim**

Plaintiff fails to state a claim under PWESCA because the Complaint does not plausibly allege the essential elements of such a claim. Specifically, Plaintiff fails to plausibly allege that Defendants intercepted the contents of any communication, that Defendant used a qualifying "device" within the meaning of the statute, or that any interception occurred contemporaneously with the transmission of the communication. Each of these deficiencies independently require dismissal of Plaintiff's PWESCA claim.

1. <u>Plaintiff's Interactions With the Website Do Not Constitute "Contents" of Communications</u>

Plaintiff fails to allege a wiretap claim because she has not plausibly alleged that the Code Vendors intercepted the "contents" of any communication. Plaintiff alleges that the Code Vendors collected page views, URLs visited, clicks, scrolling activity, text entered on the Website, and form submissions. As discussed below, courts routinely hold that page views, URLs, clicks, and scrolling activity do not constitute the contents of a communication. And while text entries, in some circumstances may constitute contents, Plaintiff *does not allege* that she actually entered information through the Website. Nor does she identify any specific text entry or form submission that was intercepted. Instead, Plaintiff relies only on generalized allegations concerning the capabilities of the Code Vendors. These generalized allegations are insufficient to plausibly allege that protected contents were intercepted.

PWESCA prohibits the interception of an electronic communication without prior consent. "Intercept" is defined as the "[a]ural or other acquisition of the *contents* of any wire, electronic or oral communication through the use of any electronic, mechanical or other device." 18 Pa.C.S.A § 5702 (emphasis added). "Contents" is defined as "any information concerning the substance, purport, or meaning of that communication." 18 Pa.C.S.A § 5702. "Contents" of a communication mean "the substance that the speaker intended to communicate and does not include automatically generated 'record' data." *Vasil v. Kiip, Inc*., No. 16-CV-09937, 2018 WL 1156328, at *2 (N.D. Ill. Mar. 5, 2018); *Cook*, 689 F. Supp. 3d at 68; *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014); *Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318, 1321 (S.D. Fla. 2021). Record data is information pertaining to a customer, rather than the "substance, purport, or meaning" of a communication. *Goldstein.*, 559 F. Supp. 3d at 1321. "Thus, determining whether a plaintiff has adequately pled a violation of the [the Act] comes down to deciding whether the acquired

information can best be characterized as either 'record information' or 'the message conveyed by the communication.'" *Cook*, 689 F. Supp. 3d at 68.

With respect to page views, URLs visited, clicks, and scrolling activity, courts routinely hold that such information constitutes record information rather than the contents of a communication and cannot support a wiretap claim. *In re TikTok, Inc. In-App Browser Priv. Litig*., No. 24 C 2110, 2024 WL 4367849, at *11 (N.D. Ill. Oct. 1, 2024) (explaining that button presses, taps, pauses, and scrolling activity do not reveal the substance of a communication); *In re Zynga*, 750 F.3d at 1107 (determining that the address of a webpage a user views does not fall within the definition of contents); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (concluding that the recording of mouse clicks, pages viewed, shipping and billing information, IP address, browser type, and the date and time of a user's visit do not constitute "content"); *Goldstein.*, 559 F. Supp. 3d at 1320-1231 (mouse movements, clicks, and pages and content viewed while on defendant's website "do not convey the substance of any communication."). Plaintiff's wiretap claim predicated on the alleged interception of page views, URLs visited, clicks, or scrolling activity fails as a matter of law because such information does not constitute the contents of a communication.

Plaintiff also alleges that the Code Vendors captured text entered on the Website and form submissions. Plaintiff, however, fails to allege with specificity any actual communications intercepted in order to allow the court to determine whether contents were intercepted. *See Murphy v. Thomas Jefferson University Hospitals, Inc.*, No. CV 22-4674, 2023 WL 7017734, at *3 (E.D. Pa. Oct. 10, 2023) (dismissing wiretap claim where plaintiffs alleged the interception of plaintiffs' healthcare information but failed to identify the specific communications intercepted).

The allegations herein are very similar to those in *Cook*, where plaintiff alleged that

defendant violated PWESCA because the session replay code on the defendant's website captured "mouse movements, clicks, keystrokes (such as text being entered into an information field or text box), URLs of web pages visited, and/or other electronic communications in real-time." *Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 61 (W.D. Pa. 2023), *aff'd as modified*, 148 F.4th 153 (3d Cir. 2025). The Western District of Pennsylvania held that the complaint failed to plausibly allege the interception of "contents" within the meaning of the statute. *See id.* at 71. As to mouse movements and clicks, the Court explained that such conduct does not reveal the substance of a communication because an observer can only speculate as to what those actions mean. *See id.* at 70. The Court analogized a visitor's navigation on a website to a customer walking through different sections of a GameStop brick-and-mortar store, further explaining that while a customer stopping by a section of a store devoted to sports video games could mean the customer was interested in sports video games, it could also mean a number of other things. *See id.*

The *Cook* Court likewise held that the complaint failed to plausibly allege that URLs constituted "contents" under the Act because URLs generally constitute addressing information that "do not necessarily reveal any more about the underlying contents of communications than do phone numbers." *Id.* at 70-71. While some URLs may qualify as content if they reveal a user's search query, in *Cook*, the plaintiff failed to allege what she searched for, whether any search generated a URL, or what information was reflected in the URL. *See id.* The Court reached the same conclusion with respect to the plaintiff's alleged keystrokes. *See id*. Because the complaint did not identify what was typed, the Court could not determine whether any captured keystrokes reflected the contents of a communication. *See id.*

Like the plaintiff in *Cook*, Plaintiff fails to identify the substance of any communication that was allegedly intercepted by the Code Vendors. The Complaint broadly alleges that the Code

Vendors collected information such as pages viewed, URLs visited, text entered on the Website, and form submissions. But Plaintiff does not allege that she searched for anything, entered any information into a form, or submitted any form through the Website—much less what information she specifically searched for on the Website or what information she specifically wrote in a form. Plaintiff relies on a screenshot purportedly depicting information collected from an unidentified Website visitor but does not allege that this screenshot reflects her own activity on the Website. As in *Cook*, the screenshots do not plausibly support Plaintiff's allegations because they do not depict Plaintiff's own use of the Website. *See id.* at 70.

Because the interactions allegedly captured on the Website do not constitute "contents" of a communication, Plaintiff fails to state a claim under PWESCA.

2. Session Replay Software Is Not a Device

Defendants' alleged use of the Code on the Website is not actionable under PWESCA because the Code is not a "device." PWESCA defines "electronic, mechanical, or other device" as "any device or apparatus, including, but not limited to, an induction coil or a telecommunication identification interception device, that can be used to intercept a wire, electronic, or oral communication" subject to three exceptions (which are not at issue here). 18 Pa.C.S.A. § 5702. And the Court must interpret the term "device" according to its common and approved usage. *Com. v. Hart*, 611 Pa. 531, 547 (2011); *State ex rel. Kalal v. Cir. Ct. for Dane Cnty*., 2004 WI 58, ¶ 45 (interpreting the same "device" component of the analogous Wisconsin wiretapping statute).

"Device" is defined as a "piece of *equipment* or mechanism designed to serve a special purpose or perform a special function." Device, *Merriam-Webster Dictionary*, www.merriam-webster.com/dictionary/device (emphasis added). Consistent with this meaning and common and approved usage, courts analyzing wiretapping claims have concluded that a "device" is something tangible and does not include software. *See Mason v. Machine Zone, Inc.*, 140 F. Supp. 3d 457,

462-463 (D. Md. 2015) (determining that the "most natural reading" of a "device" is something like a "piece of equipment"); *Potter v. Havlicek*, No. 3:06-CV-211, 2008 WL 2556723, at *8 (S.D. Ohio June 23, 2008) (holding that software is not a "device" capable of intercepting communications because it is not a "piece of equipment" and must be installed on a device in order to intercept communications); *Jacome v. Spirit Airlines Inc.*, No. 2021-000947-CA-01, 2021 WL 3087860, at *5 (Fla.Cir.Ct. June 17, 2021) (holding that session replay software that allegedly intercepted plaintiff's communications does not constitute a device under Florida's wiretap act); *Cardoso v. Whirlpool Corp.*, No. 21-CV-60784-WPD, 2021 WL 2820822, at *2 (S.D. Fla. July 6, 2021) (same); *Goldstein v. Luxottica of Am., Inc.*, No. 21-80546-CIV, 2021 WL 4093295, at *2 (S.D. Fla. Aug. 23, 2021) (same).

Because the Code is not a "device" under PWESCA, and Plaintiff fails to allege any other device the Code Vendors used to allegedly intercept her communications with Defendants, Plaintiff fails to allege an essential element of PWESCA and, therefore, fail to state a valid wiretapping claim.

3. <u>Plaintiff Has Not Alleged an Interception</u>

Plaintiff also fails to plausibly allege that the Code Vendors intercepted her communications within the meaning of PWESCA. Under the statute, "intercept" is defined as the '[a]ural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 Pa. C.S.A. § 5702. Courts interpreting PWESCA have held that a communication is intercepted only if it is acquired contemporaneously with its transmission. *Commonwealth v. Cole*, 2017 PA Super 211, 167 A.3d 49, 62 (2017). Thus, where a communication is first delivered to its intended destination and later accessed or forwarded from storage, there is no interception under the statute. *See Com. v. Proetto*, 2001 PA Super 95, ¶ 16, 771 (2001), *aff'd*, 575 Pa. 511 (2003).

Plaintiff does not plead facts demonstrating that her electronic communications were intercepted contemporaneously with any transmission. Although the Complaint repeatedly asserts that the Code Vendors acquired Plaintiff's communications "in real time" and "contemporaneously" with their transmission, those are legal conclusions. *See* Compl. ¶¶ 22, 30, 91. The Complaint alleges that Defendants embedded the Code on its Website and that the Code loads into the user's browser. *See* Compl. ¶ 20, 29. From those general allegations, Plaintiff jumps to the conclusion that every subsequent communication is intercepted contemporaneously with its transmission. But just '[u]sing the word 'intercept' repeatedly is simply not enough without the addition of facts that make it plausible [Defendants are] intercepting [Plaintiff's] data in transit." *Rodriguez v. Google, LLC*, No. 20-CV-04688-RS, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022); *see also, United States v. Szymuszkiewicz,* 622 F.3d 701, 703 (7th Cir. 2010), as amended (Nov. 29, 2010) (interpreting the analogous "contemporaneous interception" requirement in the federal wiretapping act to require that something be intercepted, "in flight"); *Sisti v. Bosley Inc.*, No. 2:25-CV-10669-JFW-DFM, 2026 WL 1223927, at *6 (C.D. Cal. Apr. 27, 2026) (dismissing federal and state wiretapping claims for failure to allege sufficient facts demonstrating interception while information in transit); *Adler v. Community.com*, 2021 WL 4805435, at *4 (C.D. Cal. Aug. 2, 2021) (dismissing a wiretap claim because plaintiff did not state a "plausible allegation that Defendant acted to learn the contents of the message while they were, in a technical sense, in transit or in the process of being received"); *Torres v. Prudential Financial, Inc*., 2025 WL 1135088, at *5 (N.D. Cal. Apr. 17, 2025) (dismissing wiretapping claim for failure to sufficiently allege how third parties could have intercepted and read the contents of communications while they were still in transit). Conclusory allegations regarding this "interception" element, like those Plaintiff makes here, fail to meet the standard that "all aspects of a complaint must rest on 'well-

pleaded factual allegations' and not 'mere conclusory statements'." *Finkelman v. Nat'l Football League*, 810 F.3d 187, 194 (3d Cir. 2016) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009)). For this reason, Plaintiff fails to state a claim under PWESCA.

4. Given a Legitimate Conflict Between the Consent Portions of PWESCA and the Analogous Wisconsin Electronic Surveillance Control Law ("WESCL"), the Single-Party Consent Component of WESCL Should Apply Resulting in Dismissal of Plaintiff's Wiretapping Claim.

For all the reasons discussed above, Plaintiff has not sufficiently established the elements of the PWESCA wiretapping claim she alleges, and that claim must be dismissed. Additionally, while Plaintiff styled the wiretapping claim under PWESCA in the Complaint and PWESCA and WESCL are materially the same in almost every aspect,[4] there is a one material difference between WESCL and PWESCA. Specifically, WESCL has a one-party consent exception from liability under which "[i]t is **not unlawful** . .. **where one of the parties** to the communication **has given prior consent** . . ." Wis. Stat. Ann. § 968.31(c) (emphasis added).[5] As discussed in Section II(B) *supra,* Wisconsin law must be applied by this Court in analyzing Plaintiff's claims where the law between the two states is the same, and where there is a conflict, courts in Wisconsin apply choice of law rules *even to statutory claims* in diversity actions. *See, e.g., Oregon Potato Co. v. Kerry Inc*., 575 F. Supp. 3d 1064, 1083 (W.D. Wis. 2021) (conducting choice of law analysis to determine whether Wisconsin or Washington law governed plaintiff's statutory consumer protection claim).

Here, where choice of law principles favor the application of Wisconsin law, a plain reading of WESCL demonstrates that while the Wisconsin legislature enacted a wiretapping statute with most of the same elements as PWESCA, it also clearly intended to provide a very concrete

[4] WESCL, like PWESCA, prohibits anyone from, inter alia, intentionally intercepting or procuring a person to intercept any wire, electronic, or oral communication. *See* Wis. Stat. Ann. § 968.31(a)-(e).

[5] PWESCA, by contrast, has a dual-party consent exception.

exception to a wiretapping violation in Wisconsin where, as here, the Defendants were the intended recipients of Plaintiff's communications.[6] And courts interpreting such one-party consent statutes routinely, across the board, apply it to these sorts of cases. *See e.g., In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 142 (3d Cir. 2015) (holding that defendants were protected by the Wiretap Act's party exception because they were intended recipients of the communications at issue); *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1065 (C.D. Cal. 2024) (determining that the defendant was the intended recipient where plaintiffs alleged the defendant employed tracking technology to intercept communications they transmitted to defendant through their use of the website); *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 718 (D. Minn. 2023) (same).

Moreover, Plaintiff cannot invoke WESCL's crime/tort exclusion to the one-party exception. That exclusion prevents a defendant from arguing single-party consent only where the alleged wiretapping occurred "for the purpose of committing any criminal or tortious act . . . or for the purpose of committing any other injurious act." Wis. Stat. § 968.31(2)(c). "[I]t is the use of the interception with intent to harm . . . that is critical to liability." *By-Prod Corp. v. Armen-Berry Co*., 668 F.2d 956, 960 (7th Cir. 1982). The alleged wiretapping conduct alone cannot supply the requisite criminal, tortious, or injurious purpose. Rather, Plaintiff must plausibly allege that Defendants used the fruits of the interception to commit an independent criminal, tortious, or injurious act. No such allegations exist here especially where, as discussed above, Plaintiff has suffered no injury and has failed to state a claim for a privacy tort.

[6] Plaintiff should not get the "benefit" of alleging a violation of PWESCA in a Wisconsin federal court to avoid the one-party consent exception that Wisconsin made clear it intended to be the law of this state with regards to all wiretapping conduct when it codified WESCL.

*        *        *

Plaintiff has not established all the elements of the wiretapping claim, therefore that claim should be dismissed with prejudice.

## CONCLUSION

Given the various failings with Plaintiff' Complaint including the failure to establish the required Article III standing, and Plaintiff's failure to sufficiently allege the elements of the claims, Defendants respectfully request that this Court dismiss the Complaint with prejudice and grant such other and further relief as the Court deems just and proper.

Dated this 2nd day of July, 2026.


**GORDON REES SCULLY MANSUKHANI, LLP**

By: */s/ Jennifer Williams*
Jennifer Williams (WI State Bar No. 1058087)
*Counsel for Defendants*
500 West Silver Spring Dr., K200
Glendale, WI 53217
(312) 261-9454

-and-

Alexandra Sandler, Esq. (*pro hac vice forthcoming)*
Brian E. Middlebrook, Esq. (*pro hac vice forthcoming)*
**Gordon Rees Scully Mansukhani, LLP**
One Battery Park Plaza, 28th Floor
New York, NY 10004
212-269-5500

Justin Holmes, Esq. (*pro hac vice forthcoming)*
**Gordon Rees Scully Mansukhani, LLP**
Three Logan Square
1717 Arch St., STE 610
Philadelphia, PA 19103
212-453-0787