**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

| | | |
|---|---|---|
| KARLA LYNCH, *individually and on behalf of all others similarly situated,* | ) | |
| Plaintiff, | ) | Case No.: 1:26-cv-00597 |
| v. | ) | Honorable Byron B. Conway |
| JEWELERS MUTUAL INSURANCE COMPANY, SI; and JM SPECIALITY INSURANCE COMPANY, | ) | **DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS** |
| Defendants. | ) | |

# TABLE OF CONTENTS


**Page**

INTRODUCTION ..... 1

STATEMENT OF FACTS ..... 4

ARGUMENT ..... 6

I. PLAINTIFF LACKS ARTICLE III STANDING ..... 6

A. Plaintiff's Alleged "Harms" Do Not Constitute a Concrete Injury Sufficient to Establish Article III Standing ..... 7

II. THE FIRST AMENDED COMPLAINT MUST BE DISMISSED PURSUANT TO FRCP § 12(B)(6) ..... 13

A. Standard ..... 13

B. This Court Should Apply Wisconsin Law in Analyzing Plaintiff's Claims. ..... 14

C. Plaintiff Fails to State a Claim for Intrusion Upon Seclusion ..... 16

1. Plaintiff Does Not Allege Highly Offensive Conduct nor a Legitimate Privacy Interest. ..... 16

2. Under Wisconsin Law, Plaintiff's Claim Also Fails for Failure to Plead Intrusion into an Actual "Place" that a Reasonable Person Would Consider Private. ..... 18

D. Plaintiff Fails to State an Unjust Enrichment Claim ..... 20

E. Plaintiff Fails to State a Valid Wiretap Claim ..... 23

1. Plaintiff's Interactions With the Website Do Not Constitute "Contents" of Communications ..... 23

2. Session Replay Software Is Not a Device ..... 26

3. Plaintiff Has Not Alleged an Interception ..... 27

4. Given a Legitimate Conflict Between the Consent Portions of PWESCA and the Analogous Wisconsin Electronic Surveillance Control Law ("WESCL"), the Single-Party Consent Component of WESCL Should Apply Resulting in Dismissal of Plaintiff's Wiretapping Claim. ..... 28

CONCLUSION ..... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adler v. Community.com*,
2021 WL 4805435 (C.D. Cal. Aug. 2, 2021)....................28

*Arndt v. Gov't Emps. Ins. Co.*,
750 F. Supp. 3d 518 (D. Md. 2024)....................4, 12, 13

*In re Arthur J. Gallagher Data Breach Litig.*,
631 F. Supp. 3d 573 (N.D. Ill. 2022)....................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................13, 28

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
571 U.S. 49 (2013)....................14

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024)....................29

*Baysal v. Midvale Indem. Co.*,
78 F.4th 976 (7th Cir. 2023)....................7, 8, 11

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)....................14

*Blitz v. Monsanto Co.*,
317 F. Supp. 3d 1042 (W.D. Wis. 2018)....................21

*Bogie v. Rosenberg*,
705 F.3d 603 (7th Cir. 2013)....................19

*In re BPS Direct, LLC*,
175 F.4th 423 (3d Cir. 2026)....................12

*Brahm v. Hospital Sisters Health System*,
No. 23-CV-444-WMC, 2026 WL 1194751 (W.D. Wis. May 1, 2026)....................10

*Breneisen v. Countryside Chevrolet/Buick/GMC, Inc.*,
573 F. Supp. 3d 1328 (E.D. Wis. 2021)....................13

*Buckeridge v. University of Wisconsin Hospital & Clinics Authority UW Health*,
2019 WI App 39....................19

*Cardoso v. Whirlpool Corp.*,
No. 21-CV-60784-WPD, 2021 WL 2820822 (S.D. Fla. July 6, 2021) ..................................26

*Cobbs v. PetMed Express, Inc.*,
No. 25-8045-CIV, 2026 WL 905375 (S.D. Fla. Jan. 14, 2026)..............................................17

*Com. v. Hart*,
611 Pa. 531 (2011).....................................................................................................26

*Com. v. Proetto*,
2001 PA Super 95 (2001), *aff'd*, 575 Pa. 511 (2003).............................................................27

*Commonwealth v. Byrd*,
235 A.3d 311 (Pa. 2020) ..............................................................................................2

*Commonwealth v. Cole*,
2017 PA Super 211, 167 A.3d 49 (2017)...........................................................................27

*Compare India Price v. Carnival Corp.*,
712 F. Supp. 3d 1347 (S.D. Cal. 2024).............................................................................12

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023), *aff'd as modified*, 148 F.4th 153 (3d Cir.
2025) ........................................................................................................3, 18, 24, 25

*Cousineau v. Microsoft Corp.*,
992 F. Supp. 2d 1116 (W.D. Wash. 2012)...........................................................................25

*Dinerstein v. Google*,
73 F.4th 502 (7th Cir. 2023) .........................................................................................10

*Drinkwater v. Am. Fam. Mut. Ins. Co.*,
2006 WI 56 ...........................................................................................................15, 16

*Fail-Safe, LLC v. A.O. Smith Corp.*,
674 F.3d 889 (7th Cir. 2012) .........................................................................................22

*Farst v. AutoZone, Inc.*,
700 F. Supp. 3d 222 (M.D. Pa. 2023)...............................................................................17

*Finch v. Southside Lincoln-Mercury, Inc.*,
2004 WI App 110.........................................................................................................16

*Finkelman v. Nat'l Football League*,
810 F.3d 187 (3d Cir. 2016)...........................................................................................28

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
528 U.S. 167 (2000)......................................................................................................6

*Giasson v. MRA – Management Association, Inc.*,
777 F. Supp. 3d 913 (E.D. Wis. 2025)....................19, 21

*Gilbert v. Lands' End, Inc.*,
No. 19-CV-1066-JDP, 2022 WL 2643514 (W.D. Wis. July 8, 2022), *aff'd*, 158 F.4th 839 (7th Cir. 2025) ....................14

*Goldstein v. Costco Wholesale Corp.*,
559 F. Supp. 3d 1318 (S.D. Fla. 2021) ....................24, 25

*Goldstein v. Luxottica of Am., Inc.*,
No. 21-80546-CIV, 2021 WL 4093295 (S.D. Fla. Aug. 23, 2021) ....................26

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015)....................29

*Sharp ex rel. Gordon v. Case Corp.*,
227 Wis. 2d 1 (1999) ....................14

*In re Grp. Health Plan Litig.*,
709 F. Supp. 3d 707 (D. Minn. 2023)....................30

*Henderson v. State Farm Mut. Auto. Ins. Co.*,
59 Wis. 2d 451 (1973) ....................14

*Hillman v. Columbia County*,
164 Wis. 2d 376, 474 N.W.2d 913 (Ct. App. 1991) ....................19

*Jacome v. Spirit Airlines Inc.*,
No. 2021-000947-CA-01, 2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021)....................4, 26

*State ex rel. Kalal v. Cir. Ct. for Dane Cnty.*,
2004 WI 58 ....................26

*Kurowski v. Rush Sys. for Health*,
683 F. Supp. 3d 836 (N.D. Ill. 2023) ....................4, 9, 14

*Loeb v. Champion Petfoods USA Inc.*,
359 F. Supp. 3d 597 (E.D. Wis. 2019)....................22

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)....................6

*Mack v. Resurgent Cap. Servs., L.P.*,
70 F.4th 395 (7th Cir. 2023) ....................6, 7

*Mason v. Machine Zone, Inc.*,
140 F. Supp. 3d 457 (D. Md. 2015) ....................26

*Massie v. Gen. Motors LLC*,
No. CV 21-787-RGA, 2022 WL 534468 (D. Del. Feb. 17, 2022) ..........................................11

*McCauley v. City of Chicago*,
671 F.3d 611 (7th Cir. 2011) ..........................................................................................14

*Mikulsky v. Bloomingdale's, LLC*,
713 F. Supp. 3d 833 (S.D. Cal. 2024)...............................................................................17

*Murphy v. Thomas Jefferson University Hospitals, Inc.*,
No. CV 22-4674, 2023 WL 7017734 (E.D. Pa. Oct. 10, 2023)..............................................25

*Nabozny v. Optio Sols. LLC*,
84 F.4th 731 (7th Cir. 2023) ............................................................................................9

*In re NCB Management Services, Inc. v. Data Breach Litigation*,
748 F.Supp.3d 262 (E.D. Pa. 2024) ..................................................................................21

*Neinaber, et al v. Overlake Hospital Med. Ctr.*,
733 F.Supp.3d 1072 (W.D. Wash. May 13, 2024) ..................................................................3

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016)..............................................................................................2

*Oliver v. Noom, Inc.*,
No. 2:22-CV-1857, 2026 WL 1992115 (W.D. Pa. July 10, 2026) ..........................................11

*Oregon Potato Co. v. Kerry Inc.*,
575 F. Supp. 3d 1064 (W.D. Wis. 2021) ............................................................................29

*Popa v. Harriet Carter Gifts, Inc.*,
426 F. Supp. 3d 108 (W.D. Pa. 2019)...............................................................................18

*Potter v. Havlicek*,
No. 3:06-CV-211, 2008 WL 2556723 (S.D. Ohio June 23, 2008)..........................................26

*In re Recalled Abbott Infant Formula Prods. Liab. Litig.*,
97 F.4th 525 (7th Cir. 2024) ............................................................................................7

*Remijas v. Neiman Marcus Grp., LLC*,
794 F.3d 688 (7th Cir. 2015) ............................................................................................8

*Rodriguez v. Google, LLC*,
No. 20-CV-04688-RS, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022).......................................28

*Seegers v. Sprague*,
70 Wis. 2d 997, 236 N.W.2d 227 (1975)............................................................................21

*Silha v. ACT, Inc.*,
807 F.3d 169 (7th Cir. 2015) ....................6, 8

*Sims v. Humane Soc. of St. Joseph Cnty. Indiana Inc.*,
758 F. Supp. 2d 737 (N.D. Ind. 2010) ....................9

*Sisti v. Bosley Inc.*,
No. 2:25-CV-10669-JFW-DFM, 2026 WL 1223927 (C.D. Cal. Apr. 27, 2026) ....................28

*Smith v. Loyola Univ. Med. Ctr.*,
No. 23 CV 15828, 2024 WL 3338941 (N.D. Ill. July 9, 2024) ....................12

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)....................6, 7

*Steamfitters Loc. Union No. 420 Welfare Fund v. Philip Morris, Inc.*,
171 F.3d 912 (3d Cir. 1999)....................22

*Story as Tr. for Story v. Marquette Univ.*,
728 F. Supp. 3d 948 (E.D. Wis. 2024)....................15

*T.D. v. Piedmont Healthcare, Inc.*,
No. 1:23-CV-5416-TWT, 2024 WL 3972984 (N.D. Ga. Aug. 28, 2024), *reconsideration denied*, No. 1:23-CV-5416-TWT, 2024 WL 5284883 (N.D. Ga. Dec. 10, 2024), *and appeal dismissed*, No. 25-10105-JJ, 2025 WL 1894802 (11th Cir. May 9, 2025), *and appeal dismissed*, No. 25-10105-JJ, 2025 WL 1894802 (11th Cir. May 9, 2025) ....................8

*Tagouma v. Investigative Consultant Servs., Inc.*,
2010 PA Super 147, 4 (2010) ....................17

*Taylor v. McCament*,
875 F.3d 849 (7th Cir. 2017) ....................7

*Tignor v. Dollar Energy Fund, Inc.*,
745 F. Supp. 3d 189 (W.D. Pa. 2024)....................21

*In re TikTok, Inc. In-App Browser Priv. Litig.*,
No. 24 C 2110, 2024 WL 4367849 (N.D. Ill. Oct. 1, 2024) ....................24

*Torres v. Prudential Financial, Inc.*,
2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) ....................28

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)....................7, 9

*Uebelacker v. Rock Energy Cooperative*,
2025 WI App 23....................19

*United States v. Szymuszkiewicz*,
622 F.3d 701 (7th Cir. 2010), *as amended* (Nov. 29, 2010)....................................28

*Vasil v. Kiip, Inc.*,
No. 16-CV-09937, 2018 WL 1156328 (N.D. Ill. Mar. 5, 2018)..............................24

*Whitaker v. Herr Foods, Inc.*,
198 F. Supp. 3d 476 (E.D. Pa. 2016)......................................................................22

*Wolf v. Wolf*,
356 Pa. Super. 365, 514 A.2d 901 (1986)................................................................21

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021)..........................................................4, 24, 25

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014)..................................................................................24

**Constitutions**

U.S. Const. art. III..............................................................................................2, 6, 7, 13

**Statutes**

18 Pa. Stat. and Cons. Stat. Ann. § 5702..........................................................24, 26, 27

Wis. Stat. Ann. § 968.31(a)-(e)....................................................................................29

Wis. Stat. Ann. § 968.31(c)..........................................................................................29

Wis. Stat. Ann. § 995.50................................................................................17, 18, 19, 20

**Rules**

Fed. R. Civ. P. § 12(b)(1)..........................................................................................7, 13

Fed. R. Civ. P. § 12(b)(6)................................................................................................13

**Other Authorities**

Restatement (Second) of Torts § 652..............................................................................17

Restatement (Second) of Torts § 652B............................................................................17

## INTRODUCTION

Plaintiff's proposed class action complaint is yet another example in the deluge of actions brought across the country attempting to impose extraordinary and unfounded liability on various businesses based on allegations that consumers' voluntary access and use of public facing websites was encroached upon by third-party "trackers" on those websites. Here, Plaintiff attempts to allege invasion of privacy, unjust enrichment, and violation of Pennsylvania Wiretapping and Electronic Surveillance Control Act ("PWESCA") based on the use of commonplace analytics and session replay features on Defendants' website, www.jewelersmutual.com (the "Website") by third party-providers, Mixpanel and New Relic (collectively "Code Vendors"). Karla Lynch ("Plaintiff") alleges that Defendants, Jewelers Mutual Insurance Company, SI and JM Specialty Insurance Company (collectively, "Defendants"), collected innocuous information concerning her visits to the Website, including the pages viewed, URLs visited, clicks made, scrolling activity performed, and buttons selected reflecting her interest in jewelry insurance, as wells as form submissions made and unspecified text entered conveying information about herself, information about her browsing device, and information sufficient to approximate her geolocation. Plaintiff further alleges that Defendants gained insightful consumer data that could be used for Website improvements and targeted advertisements and, in so doing, Defendants gained an economic benefit. What ***Plaintiff does not allege*** factually in the First Amended Complaint, however, ***is most telling***:

- ***Plaintiff does not identify*** any Personally Identifiable Information ("***PII***") she entered on the Website at any time during her use of the Website. Not her contact information, payment information or anything identifying her—nothing to distinguish her from any other anonymous Website user.
- ***Plaintiff does not allege*** that the ***Code Vendors actually identified her***, relying instead only on unsubstantiated claims about what they ***might*** do.
- ***Plaintiff does not allege*** that ***Defendants did anything to attempt to discover who she was*** upon her use of the Website.

- ***Plaintiff does not allege any concrete actual injury or that Defendants obtained a financial benefit*** that is inequitable under the circumstances.

As addressed more fully below, all of Plaintiff's legal claims fail as a matter of law.

*First*, Plaintiff lacks Article III standing because she does not plausibly allege that she suffered a concrete injury. Plaintiff claims that the Code Vendors captured information concerning her interactions with the Website and that, as a result, she suffered emotional distress, lost the economic value of her information, and conferred an improper benefit on Defendants. As numerous courts recognize, such alleged harms do not constitute concrete injuries sufficient to invoke federal jurisdiction. Further, Plaintiff's allegations do not give rise to a substantial privacy injury analogous to the common-law torts of public disclosure of private facts or intrusion upon seclusion. Plaintiff does not allege that anyone actually identified her or obtained highly sensitive information concerning her.

*Second*, Plaintiff fails to state a valid claim under the Pennsylvania wiretap statute for three independent reasons. Firstly, Plaintiff does not plausibly allege the "interception" of the contents of any communication. Secondly, Plaintiff's wiretap theory largely rests on allegations concerning page views, URLs, clicks, scrolling activity, and browsing—information courts consistently recognize as record information rather than the substance or meaning of a communication. Although Plaintiff alleges that she entered text conveying information about herself and that the Code Vendors captured text entries and form submissions, she never identifies the specific text she entered or any specific form submission. Thirdly, Plaintiff fails to plausibly allege the use of a qualifying "device" or a contemporaneous interception; and it is undisputed that Defendants, as parties to the communication, consented to the conduct alleged. *See e.g., Commonwealth v. Byrd*, 235 A.3d 311, 319 (Pa. 2020) (consent as an exception to wiretapping can be demonstrated when a person knew or should have known they were being recorded); *In re Nickelodeon Consumer*

*Priv. Litig.*, 827 F.3d 262, 266 (3d Cir. 2016) ("[m]ost of us understand that what we do on the Internet is not completely private," and "recognize, even if only intuitively, that our data . . . feed[s] an entire system of trackers, cookies, and algorithms designed to capture and monetize the information we generate.")

*Third*, Plaintiff's invasion of privacy claim (whether it is governed by Pennsylvania law or Wisconsin law) fails because no highly offensive conduct is alleged. If the Court concludes this claim is governed by Wisconsin law, Plaintiff does not allege an intrusion into a protected "place," a necessary element of the claim.

*Fourth*, Plaintiff's unjust enrichment claim fails because she does not plausibly allege that Defendants received any benefit from her Website communications. Plaintiff's assertions that Defendants retained "monetary benefits" and "economic gains" are conclusory. Although Plaintiff identifies several ways in which consumer data *could* be valuable, she does not allege that Defendants actually used her information for any of those purposes or otherwise profited from it. Moreover, because the claim rests on the same alleged conduct as her deficient wiretap and intrusion upon seclusion claims, she cannot plausibly allege that Defendants' retention of any purported benefit was unjust.

*Fifth*, courts around the country have routinely dismissed similar claims, including under PWESCA, and this Court should follow form. *See e.g., Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 61 (W.D. Pa. 2023), *aff'd as modified*, 148 F.4th 153 (3d Cir. 2025) (dismissing plaintiff's claim under PWESCA because plaintiff's mouse movements, clicks, URLs, and unspecified keystrokes were not "contents" of a communication); *Neinaber, et al v. Overlake Hospital Med. Ctr.*, 733 F.Supp.3d 1072 (W.D. Wash. May 13, 2024) (dismissing pixel website tracking claims finding plaintiffs had not plead sufficient and necessary elements of various common law and

statutory causes of action—highlighting the lack of sufficient damages pled and the voluntary nature of plaintiff's conduct as barring plaintiff's claims); *Arndt v. Gov't Emps. Ins. Co.*, 750 F. Supp. 3d 518, 528 (D. Md. 2024) (dismissing pixel tracking lawsuit for lack of concrete injury based on defendant's alleged collection of mere website activity, such as mouse movements, keystrokes and clicks, search terms, or content viewed by plaintiff on defendant's website because "[s]uch information does not convey any personal, private, or identifying information" and this information is "comparable to that which would reflect 'public shopping behavior in the real world'"); *Jacome v. Spirit Airlines Inc.,* No. 2021-000947-CA-01, 2021 WL 3087860, at *5 (Fla. Cir. Ct. June 17, 2021) (concluding that plaintiff failed to state a claim under Florida's wiretap statute because session replay software does not constitute an "electronic, mechanical, or other device" within the meaning of the statute); *Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 844 (N.D. Ill. 2023) (dismissing wiretapping claim finding that, "[t]he type of metadata that [plaintiff] alleges was transmitted via third-party source code does not in the least bit fit into [the PHI] category."); *Yoon v. Lululemon USA, Inc.,* 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (plaintiff failed to state a claim under California Invasion of Privacy Act because keystrokes, mouse clicks, pages viewed, and shipping and billing information are not contents of a communication).

For these reasons, Plaintiff's First Amended Complaint should be dismissed.

## STATEMENT OF FACTS

Defendants operate the Website. *See* Plaintiff's First Amended Complaint ("FAC") ¶ 12.[1] According to the FAC, Defendants embedded a Javascript code provided by the Code Vendors, Mixpanel and New Relic, on its Website (the "Code"). *See id*. ¶¶ 2-3. Mixpanel is a web analytics

[1] The allegations in Plaintiff's First Amended Complaint are assumed true for purposes of Defendants' motion to dismiss only. Defendants reserve all rights to challenge Plaintiff's factual allegations and legal theories.

platform that allows companies to analyze how and why users engage with website content. *See id*. ¶ 16. New Relic provides session replay technology that is capable of permitting the user's browsing session to be replayed after the fact. *See id*. ¶ 25.

Plaintiff, a Pennsylvania resident, alleges that she visited the Website while located in Pennsylvania. *See id*. ¶ 9, 52. Plaintiff alleges that the Code Vendors collected and intercepted users' electronic communications with the Website, including page views, URLs visited, clicks made, scrolling activity performed, text entered on the Website, and form submissions made. *See id*. ¶¶ 2, 20-22, 28-32. With respect to her own visits, Plaintiff alleges that she clicked on links, drop-down menus, and buttons reflecting her interest in insuring jewelry and learning more about jewelry insurance and entered unspecified text conveying information about herself to obtain quotes about insurance products from Defendants. *See id*. ¶¶ 54-55. Plaintiff alleges that the Code Vendors intercepted information concerning these interactions, her browsing device, and her approximate geolocation. *See id.* Further, Plaintiff asserts that Mixpanel is capable of identifying a user by gathering information such as cookies, IP addresses, email addresses, device information, location information, and other unspecified "unique identifiers." ¶ 20. Plaintiff claims that, after visiting the Website, she began receiving advertisements related to Jewelers Mutual and similar products which, she alleges, upon information and belief, were a result of the Code Vendors capturing her information during her Website visit. *See id.* ¶¶ 56.

The FAC does not identify any specific, personal information or form submission that was intercepted by the Code Vendors. The screenshots included in the FAC purportedly depict information that was collected from an unidentified Website visitor, but Plaintiff does not allege that those screenshots reflect her own activity on the Website. *See id.* ¶¶ 20, 28, 54–55, 95. Moreover, although Plaintiff alleges that the intercepted information permitted an approximation

of her geolocation, she does not allege that the Code Vendors determined her specific location or residential address. Nor does she allege that the Code Vendors identified Plaintiff or linked any intercepted information to her.

Plaintiff also alleges that Defendants obtained more insightful consumer data that could be used for website improvements, focused advertising, exchanges for Code Vendor services, direct data sales, or other methods of value. *See id.* ¶¶ 128–36.

Based on these allegations, Plaintiff asserts three causes of action against Defendants for violation of PWESCA, invasion of privacy – intrusion upon seclusion, and unjust enrichment. *See id.* ¶¶ 83-138. Plaintiff seeks to represent a class of Pennsylvania citizens who visited the Website, chose to reject cookies, and had their electronic communications and browsing data captured by the third-party code embedded on the Website *See id*. ¶ 70. Plaintiff claims she is entitled to statutory damages, punitive damages, and reasonable attorney's fees. *See id.* ¶ 56.

## ARGUMENT

### I. PLAINTIFF LACKS ARTICLE III STANDING

"Article III of the Constitution limits federal judicial power to certain 'cases' and controversies' and the 'irreducible constitutional minimum' of standing contains three elements." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (*quoting Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-60 (1992)). The three elements are: (1) an injury in fact; (2) causation; and (3) redressability. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 168 (2000). "To establish an injury in fact, a plaintiff must show that he or she suffered an 'invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Mack v. Resurgent Cap. Servs., L.P.*, 70 F.4th 395, 403 (7th Cir. 2023) (*quoting Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)). "Concrete" means the injury

must be real and not abstract. *See id.* Tangible harms, like physical and monetary harms, "readily qualify as concrete." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021). Intangible harms, such as "reputational harms, disclosure of private information, and intrusion upon seclusion" may also be concrete. *See id.* at 425. With respect to intangible harms that Plaintiff alleges here, to determine if an injury is concrete, courts consider whether an alleged intangible harm has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit. *See id.* A plaintiff cannot claim "a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Spokeo*, 578 U.S. at 342 (2016).

A plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing the elements of Article III standing. *See In re Recalled Abbott Infant Formula Prods. Liab. Litig.*, 97 F.4th 525, 528 (7th Cir. 2024). Where a plaintiff lacks standing to maintain a claim in federal court, the complaint must be dismissed pursuant to FRCP § 12(b)(1) for lack of subject matter jurisdiction. *Taylor v. McCament*, 875 F.3d 849, 855 (7th Cir. 2017).

**A. Plaintiff's Alleged "Harms" Do Not Constitute a Concrete Injury Sufficient to Establish Article III Standing**

In the FAC, Plaintiff alleges that Defendants procured the interception of her communications and invaded her privacy, which caused her mental anguish, emotional distress, worry, and fear; deprived her of the economic value of her personal information and website interactions; and improperly benefitted from invasion of privacy through Defendants' use of data. *See* FAC ¶¶ 121-125, 133-137. She also alleges the receipt of so- called "targeted advertisements" but does not explain how these injured her. *See id.* at ¶¶ 56.

All the alleged "injuries" are insufficient to establish standing as a matter of law. As the Seventh Circuit held in *Baysal v. Midvale Indem. Co.*, allegations of worry and fear do not constitute concrete injuries because if they did, "almost everyone could litigate about almost

anything." 78 F.4th 976, 977-78 (7th Cir. 2023). Nor can Plaintiff establish standing based on the alleged loss of the economic value of her information or Website interactions. Courts in the Seventh Circuit have repeatedly rejected the proposition that personal identifiable information ("PII") possesses an independent monetary value sufficient to constitute a concrete injury. *See Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 695 (7th Cir. 2015)*; In re Arthur J. Gallagher Data Breach Litig*., 631 F. Supp. 3d 573, 592 (N.D. Ill. 2022). Similarly, Plaintiff's threadbare allegations about so called "targeted advertisements" are unavailing given she does not explain how these are at all injurious. *See T.D. v. Piedmont Healthcare, Inc.*, No. 1:23-CV-5416-TWT, 2024 WL 3972984, at *3 (N.D. Ga. Aug. 28, 2024), *reconsideration denied*, No. 1:23-CV-5416-TWT, 2024 WL 5284883 (N.D. Ga. Dec. 10, 2024), *and appeal dismissed*, No. 25-10105-JJ, 2025 WL 1894802 (11th Cir. May 9, 2025), *and appeal dismissed*, No. 25-10105-JJ, 2025 WL 1894802 (11th Cir. May 9, 2025) (Rejecting targeted ads as damages finding that, "No facts are alleged that would explain how receiving targeted advertisements . . . would plausibly cause any of the Plaintiffs to suffer . . . damages.").[2] Likewise, Plaintiff cannot establish standing based on Defendants' alleged "profit" from her information because standing must be based on a plaintiff's loss, not a defendant's gain. *See Silha v. ACT, Inc.*, 807 F.3d 169, 175 (7th Cir. 2015).

The only remaining "injuries" that Plaintiff alleges are the purported interception of her "confidential communications" and "PII" through the specific details of her use of the public-facing Website. To establish standing for such intangible harms, Plaintiff needs to demonstrate that the alleged injury bears a close relationship to traditionally recognized privacy torts. *See*

---

[2] Although Plaintiff claims she observed advertisements for Defendants' products on Facebook, she does not allege facts connecting those advertisements to the information allegedly collected through the Website. Even if these advertisements were somehow deemed to be concrete "injuries," which they are not, given the pervasive nature of the internet, it is just as likely that these advertisements resulted from some other conduct by Plaintiff on the internet than from her anonymous interaction with the Website. Simply stated, Plaintiff has not alleged facts demonstrating these targeted ads are fairly traceable to Defendants' conduct.

*TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). This is a tall order as numerous courts across the country have held that injuries of the type alleged in the FAC do not bear a close relationship to traditionally recognized privacy torts and thus do not give rise to standing in website tracking cases.

*First*, Plaintiff does not plausibly allege that Defendants publicly disclosed her information, as is required to resemble the tort of public disclosure of private facts. "The public-disclosure form of the privacy tort protects against the humiliation that accompanies the disclosure of sensitive or scandalizing private information to public scrutiny." *Nabozny v. Optio Sols. LLC*, 84 F.4th 731, 736 (7th Cir. 2023). It does not include just any communication by a defendant to a third person but requires that "the matter be 'made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.'" *Nabozny*, 84 F. 4th 731 at 735. "A communication made to a single person or to a small group of people is not actionable because the publicity element requires communication to the public at large." *Sims v. Humane Soc. of St. Joseph Cnty. Indiana Inc.*, 758 F. Supp. 2d 737, 748 (N.D. Ind. 2010); *see also Nabozny*, 84 F. 4th 731 (no standing where defendant disclosed plaintiff's financial information to a single third-party mail vendor); *Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 849 (N.D. Ill. 2023) (determining plaintiff failed to satisfy the publicity element where defendant disclosed plaintiff's information to three private businesses). Here, Plaintiff's allegations that Defendant disclosed her communications on the Website to Mixpanel and New Relic (*i.e.*, the two Code Vendors) do not satisfy the publicity element required for the tort of public disclosure of private facts. The alleged communications were made to only two private entities, and Plaintiff does not allege that the Code Vendors publicly disclosed her information.

*Second*, Plaintiff does not plausibly allege that the Code Vendors identified her from the intercepted information, an element logically necessary to establish a common law tort of public disclosure of private facts. In *Dinerstein v. Google*, a pixel tracking lawsuit, the Seventh Circuit held that a plaintiff lacked standing where he alleged only that Google received his anonymized medical records but did not allege that Google actually used the disclosed information to identify him. *See* 73 F.4th 502, 515-516 (7th Cir. 2023). The court explained that absent the ability to identify the plaintiff, "there can be no communication and hence no publicity." *Id.* at 514. Likewise, in *Brahm v. Hospital Sisters Health System*, a recent decision from the Western District of Wisconsin, the court acknowledged the difficulty in plaintiffs' ability to establish standing in website tracking cases and held that plaintiffs lacked standing where they alleged that Google Analytics received IP addresses, cookies, browser fingerprints, and URLs reflecting their activity on defendants' websites but failed to show that Google *actually identified them*. *See* No. 23-CV-444-WMC, 2026 WL 1194751, at *7-8 (W.D. Wis. May 1, 2026). Allegations that Google possessed the capability to identify users were held insufficient absent evidence that Google connected the intercepted information to the plaintiffs' identities. *Id.*

Here, Plaintiff alleges that the Code Vendors collected information such as cookies, IP addresses, email addresses, device and operating system information, and location information, and that the Code Vendors intercepted electronic communications, including the text Plaintiff entered on the Website that conveyed information about herself and information sufficient to approximate her geolocation. *See* FAC ¶ 20. Plaintiff does not explain what information she entered and, importantly, does not allege that the Code Vendors intercepted her name, residential address, payment information, or any other information identifying her. Her allegation that the intercepted information permitted an approximation of her geolocation does not mean that her

residential address was disclosed. *See id.* ¶ 54-55. Plaintiff could have accessed the Website from a coffee shop, her workplace, or any other location, and she does not allege that the Code Vendors determined the specific address from which she accessed the Website. Nor does she allege that the Code Vendors connected the intercepted information to her identity through the information collected. In effect, everything she was doing on the Website was anonymous. Under *Dinerstein* and *Brahm*, that is insufficient to establish a concrete injury.

*Third*, Plaintiff cannot establish a concrete injury because the information allegedly intercepted is not the type of highly sensitive information protected by the common law torts of public disclosure of private facts or intrusion upon seclusion. Plaintiff alleges only the interception of her page views, URLs, clicks, scrolling, and keystrokes on the Website, which revealed her interest in insuring jewelry, unspecified information about herself, information about her browsing device, and her approximate geolocation. She does not allege that those interactions disclosed any medical, financial, or other intimate personal information that could give rise to a privacy tort. *See Baysal v. Midvale Indemnity Co.*, 78 F.4th 976, 980–82 (7th Cir. 2023) (holding that disclosure of a driver's license number did not constitute a concrete injury because it was not the type of private or embarrassing information protected by the common law privacy torts*); Oliver v. Noom, Inc.*, No. 2:22-CV-1857, 2026 WL 1992115, at *2 (W.D. Pa. July 10, 2026) (determining that the interception of information plaintiff disclosed through an online quiz, including her weight-loss goals, gender, age, height, weight, lifestyle, and marital status did not constitute a concrete injury to support standing to assert a wiretapping claim); *Massie v. Gen. Motors LLC*, No. CV 21-787-RGA, 2022 WL 534468, at *2 (D. Del. Feb. 17, 2022) (no concrete injury where the information intercepted included mouse movements, clicks, keystrokes, a user's location at the time of visit, browser type, and device's operating system).

Where Courts find standing, financial information, Protected Health Information ("PHI"), or other highly personal information, such as passport or social security numbers, is actually at issue. That is not the case here. *Compare India Price v. Carnival Corp.*, 712 F. Supp. 3d 1347, 1354 (S.D. Cal. 2024) (finding standing where plaintiff alleged that software actually intercepted sensitive personal information, including passport and credit card numbers); *Smith v. Loyola Univ. Med. Ctr.*, No. 23 CV 15828, 2024 WL 3338941, at *4 (N.D. Ill. July 9, 2024) (finding a concrete injury where actual PHI was alleged to have been at issue); *In re BPS Direct, LLC*, 175 F.4th 423, 428–33 (3d Cir. 2026) (holding that the interception of mouse movements, clicks, scrolling, text entries, and search terms did not establish a concrete injury because such activity was "no more private than the physical browsing countless shoppers do daily in defendants' brick-and-mortar stores," while distinguishing plaintiffs whose complete credit or debit card information was intercepted).

The allegations in this case resemble those in *Arndt v. Government Employees Insurance Co. See* 750 F. Supp. 3d 518, 526-528 (D. Md. 2024). In *Arndt*, the plaintiff alleged that session-replay software intercepted his mouse movements, keystrokes, clicks, search terms, and content viewed on the defendant's website, as well as information entered while obtaining an automobile insurance quote, including basic contact information, marital status, vehicle and driving history, highest level of education, and governmental, military, and group associations. *See id.* With respect to the mouse movements, keystrokes, clicks, search terms, and content viewed on the defendant's website, the court determined that such information does not convey personal, private, or identifying information and instead is comparable to that which would reflect "'public shopping behavior in the physical world.'" *Id.* With respect to the remaining information, the court determined that most of this information is exactly the type of information provided to parties for

the purposes of acquiring insurance and is not highly sensitive to confer standing. *See id.* Here, Plaintiff alleges that the Code Vendors intercepted her clicks, buttons, and text which revealed her interest in insuring jewelry and unspecified information about herself. *See* FAC ¶ 95. This type of information is no more sensitive than the information in *Arndt*, where standing was not established. Indeed, Plaintiff does not even identify the information she submitted to Defendants. Her allegation that the Code Vendors intercepted text conveying "information about herself" is, at best, conclusory and insufficient to establish the interception of highly sensitive information capable of causing a concrete injury.

Accordingly, Plaintiff lacks Article III standing to bring this FAC because she has not suffered a concrete injury. This Court should dismiss the FAC pursuant to FRCP § 12(b)(1).

## II. THE FIRST AMENDED COMPLAINT MUST BE DISMISSED PURSUANT TO FRCP § 12(B)(6)

The FAC also fails to state a claim upon which relief can be granted. As discussed below, Plaintiff cannot state a claim for intrusion upon seclusion or unjust enrichment under either Wisconsin or Pennsylvania law. Further, Plaintiff's statutory wiretap claim fails because Plaintiff does not plausibly establish that "contents of a communication" were intercepted, or that a "device" existed, or that "interception" required for a wiretapping claim even occurred.

### A. Standard

A §12(b)(6) motion to dismiss "tests the legal sufficiency of the complaint. "*Breneisen v. Countryside Chevrolet/Buick/GMC, Inc.*, 573 F. Supp. 3d 1328, 1330 (E.D. Wis. 2021). A complaint must be dismissed pursuant to Rule 12(b)(6) where the plaintiff fails to allege sufficient facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." "The plaintiff must provide 'some specific facts to support the legal claims asserted' and cannot rely on conclusory allegations to make his claim." *Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 841 (N.D. Ill. 2023) (quoting *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

**B. This Court Should Apply Wisconsin Law in Analyzing Plaintiff's Claims.**

Plaintiff asserts three claims, all purportedly under Pennsylvania law: a violation of PWESCA, intrusion upon seclusion, and unjust enrichment. In determining which law governs a claim, however, "[a] federal court sitting in diversity ordinarily must follow the choice-of-law rules of the State in which it sits." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 65 (2013). This rule applies equally to actions brought under the Class Action Fairness Act ("CAFA"), as is the case here, because CAFA jurisdiction is a form of diversity jurisdiction. *See Gilbert v. Lands' End, Inc.*, No. 19-CV-1066-JDP, 2022 WL 2643514, at *2 (W.D. Wis. July 8, 2022), *aff'd*, 158 F.4th 839 (7th Cir. 2025). Thus, Wisconsin's choice of law rules apply to determine which state's law governs Plaintiff's claims.

The first "threshold determination in a conflict of laws case is whether a genuine conflict exists between Wisconsin law and the law of another state." *Sharp ex rel. Gordon v. Case Corp.*, 227 Wis. 2d 1, 10 (1999). If the laws of Wisconsin and the other state are the same, the Court must apply Wisconsin law. *Id. Henderson v. State Farm Mut. Auto. Ins. Co.*, 59 Wis. 2d 451, 454 (1973) ("Before a conflict-of-laws problem is presented, it must appear that the ultimate selection of law will affect the outcome"). As discussed in further detail below, under either Wisconsin or

Pennsylvania law the outcome is the same—Plaintiff cannot prevail on any of her claims based on the conduct alleged in the FAC regardless of which state's law applies. To the extent this Court determines that a conflict of laws exists, however, then the Court should look at the second prong of the choice of law analysis. Under that prong, Wisconsin law presumptively applies "unless it becomes clear that nonforum contacts are of greater significance." *Drinkwater v. Am. Fam. Mut. Ins. Co.*, 2006 WI 56, ¶ 40. In determining which state has more significant contacts, the Court considers "where the injury occurred, where the conduct causing the injury occurred, the residence of the parties, and the place where the relationship between the parties is centered." *Story as Tr. for Story v. Marquette Univ.*, 728 F. Supp. 3d 948, 954 (E.D. Wis. 2024).

The alleged non-Wisconsin contacts here are not of greater significance than the Wisconsin contacts. Defendants are incorporated in Wisconsin, and their principal places of business are in Neenah, Wisconsin. *See* FAC ¶¶ 10-11. Defendants operate the Website from Wisconsin. *See* FAC ¶¶ 10-12. Although Plaintiff alleges that she accessed the Website from Pennsylvania (s*ee* FAC ¶ 52), that carries little significance because the Website is publicly accessible and available to users anywhere. Plaintiff's residence and access to the Website from Pennsylvania do not outweigh Wisconsin's significant relationship to Defendants and Defendants alleged conduct underlying Plaintiff's claims.

Even if the Court proceeds to apply the third prong of the choice of law analysis, the application of Wisconsin law is appropriate because each of the choice-influencing factors in this five-factor test weigh in favor of Wisconsin.The first factor, predictability of results, favors Wisconsin law. *See Drinkwater*, 2006 WI at ¶ 40. Defendants are headquartered in Wisconsin and operate their businesses and the Website from Wisconsin. Defendants would reasonably expect that the consequences of their operation of the Website would be governed by Wisconsin law,

particularly since Plaintiff brought this action in Wisconsin. The second factor, examination of the states' respective governmental interests, also weighs in favor of Wisconsin. *See Drinkwater*, 2006 WI at ¶ 40. While Pennsylvania may have an interest in protecting its residents from alleged invasions of privacy, this interest should not extend to matters that occur outside of Pennsylvania.

The other three factors also favor Wisconsin. *See Drinkwater*, 2006 WI at ¶ 40. The third factor, which considers which state's law will simplify the Court's judicial task, favors Wisconsin law. This Court deals with Wisconsin law far more frequently than with Pennsylvania law. *See Finch v. Southside Lincoln-Mercury, Inc.*, 2004 WI App 110, ¶ 30. Related to the fourth factor, Wisconsin clearly has a stronger interest in regulating the conduct of corporations that operate their businesses within Wisconsin, rather than protecting the interests of plaintiffs who reside outside of Wisconsin. Finally, related to the fifth factor, Wisconsin law provides the better rule of law because it provides a consistent legal standard governing Defendants' operation of the Website, rather than subjecting Defendants to the law of every state from which a user might access the Website.

In sum, the choice of law analysis weighs in favor of the application of Wisconsin law. Accordingly, this Court must apply Wisconsin law to Plaintiff's claims, even while the application of either law will result in dismissal of Plaintiff's case.[3]

**C. Plaintiff Fails to State a Claim for Intrusion Upon Seclusion**

1. <u>Plaintiff Does Not Allege Highly Offensive Conduct nor a Legitimate Privacy Interest.</u>

Plaintiff cannot establish that Defendants' alleged conduct was highly offensive to a reasonable person, a required element of a claim for intrusion upon seclusion under the laws of

[3] In the subsequent sections, Defendant addresses both Wisconsin and Pennsylvania law in an abundance of caution.

Wisconsin and Pennsylvania. *See* Wis. Stat. Ann. § 995.50 (codifying the elements of an intrusion upon seclusion claim); *Tagouma v. Investigative Consultant Servs*., Inc., 2010 PA Super 147, 4 (2010) (*quoting* Restatement (Second) of torts § 652 and stating that Pennsylvania follows Section 652B of the Restatement (Second) of Torts, which provides that "one who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, ***if the intrusion would be highly offensive to a reasonable person***.") (emphasis added).

As discussed in Section I *supra*, courts addressing claims arising from website tracking technologies have repeatedly concluded that collection of browsing activity, such as keystrokes, search terms, and clicks, and information that does not constitute PHI, financial information, or other highly personal information does not establish the existence of any injury-in-fact. Moreover, courts analyzing invasion of privacy claims based on website tracking of such information have also consistently found that such tracking is not highly offensive to a reasonable person. *See Mikulsky v. Bloomingdale's, LLC,* 713 F. Supp. 3d 833, 846 (S.D. Cal. 2024) (holding that plaintiff failed to state a claim for intrusion upon seclusion because plaintiff does not have a privacy interest in browsing data on defendant's website); *Farst v. AutoZone, Inc*., 700 F. Supp. 3d 222, 229 (M.D. Pa. 2023) (determining that the alleged recording of plaintiff's mouse clicks, keystrokes, search terms, page views, scroll movements, and copy-and-paste actions while browsing defendant's website which revealed plaintiff's shopping preferences was not the type of highly offensive conduct necessary to support a claim for intrusion upon seclusion); *Cobbs v. PetMed Express, Inc.*, No. 25-8045-CIV, 2026 WL 905375, at *11 (S.D. Fla. Jan. 14, 2026) (concluding that collection of pet-related information, keystrokes, links, and form entries through cookies on a commercial website was not highly offensive to support an intrusion upon seclusion claim because such

tracking is widespread and does not resemble the invasions of privacy historically recognized at common law); *Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108, 122–23 (W.D. Pa. 2019) (holding that collection of plaintiff's keystrokes, mouse clicks, name, residential address, and email address through website tracking technology was not sufficiently highly offensive to state a claim for intrusion upon seclusion); *Cook v. GameStop, Inc.*, 689 F. Supp. at 61 (concluding plaintiff failed to state a claim for intrusion upon seclusion because disclosure of plaintiff's website activity, including the products she browsed and added to her cart, does not constitute highly objectionable conduct needed to state a claim) .

Here, Plaintiff alleges only that the Code Vendors intercepted page views, URLs visited, IP address, demographic information, clicks, and scrolls that revealed her interest in insuring jewelry, text conveying unspecified information about herself, her approximate geolocation at the time of her visit, and information about her browsing device. *See* FAC ¶¶ 2, 54-55. Plaintiff further alleges Defendants represented they would limit tracking if she rejected functional and advertising cookies but nevertheless continued to collect her information. *See id*. ¶¶ 53, 66-68. Even accepting these allegations as true, Defendants' alleged failure to honor Plaintiff's cookie preferences does not render the conduct actionable because none of the intercepted information meets the "highly offensive" threshold necessary to state a claim for intrusion upon seclusion. Accordingly, Plaintiff's intrusion upon seclusion should be dismissed.

2. Under Wisconsin Law, Plaintiff's Claim Also Fails for Failure to Plead Intrusion into an Actual "Place" that a Reasonable Person Would Consider Private.

Wisconsin's intrusion upon seclusion claim is codified in Wis. Stat. Ann. § 995.50, which provides that one who intrudes "upon the privacy of another of a nature highly offensive to a reasonable person . . . in a place that a reasonable person would consider private, or in a manner

that is actionable for trespass" is subject to liability. Wis. Stat. Ann. § 995.50 (2025-26). Thus, to state a claim for intrusion upon seclusion, a plaintiff must plead two elements: (1) that the defendant intruded upon the plaintiff's privacy in a place that a reasonable person would consider private, or in a manner actionable for trespass; and (2) that the intrusion was of a nature highly offensive to a reasonable person. *Bogie v. Rosenberg*, 705 F.3d 603, 610 (7th Cir. 2013) (analyzing Wisconsin law).

In *Hillman v. Columbia County*, the Wisconsin Court of Appeals held that the term "place" refers to a geographical location. *See* 164 Wis. 2d 376, 392, 474 N.W.2d 913, 919 (Ct. App. 1991). Because the term is geographical, the court concluded that an inmate failed to state an intrusion upon seclusion claim based on allegations that jail employees accessed his medical records because a file containing medical records is not a "place" as that term is used in the statute. *See id.* This geographical limitation has been applied in subsequent cases involving electronic records and digital communications. *See, for e.g., Buckeridge v. University of Wisconsin Hospital & Clinics Authority UW Health*, 2019 WI App 39, ¶ 13 (holding that medical records stored on a computer system do not constitute a "place" sufficient to assert a claim for intrusion upon seclusion); *Uebelacker v. Rock Energy Cooperative*, 2025 WI App 23, ¶ 14 (rejecting plaintiff's claim that her employer was liable for intrusion upon seclusion when an IT manager viewed her Facebook Messenger conversation because digital communications do not constitute a protected "place" under the statute); *Giasson v. MRA – Management Association, Inc.*, 777 F. Supp. 3d 913, 937 (E.D. Wis. 2025) (dismissing intrusion upon seclusion claim arising from a data breach that resulted in the exposure of plaintiff's personally identifiable information, including her Social Security number, medical information, and financial account information because plaintiff failed to allege an intrusion in a protected place).

Here, Plaintiff's interactions on the Website do not involve an intrusion into a protected "place" within the meaning of Wis. Stat. Ann. § 995.50. The public facing Website is not a geographical place that a reasonable person would consider private, and the alleged intercepted communications are no more a protected "place" than the Facebook Messenger communications in *Uebelacker* or the personal information exposed in *Giasson*. Accordingly, Plaintiff cannot state a claim for intrusion upon seclusion under Wisconsin law, and this claim should be dismissed.

### D. Plaintiff Fails to State an Unjust Enrichment Claim

Plaintiff's unjust enrichment theory is that Defendants misrepresented Plaintiff's ability to limit the collection of her Website communications and thereby obtained valuable consumer data at the expense of her privacy. *See* FAC ¶¶ 128–31. She alleges that this "more insightful consumer data" could be used for Website improvements, focused advertising, exchanges for Code Vendor services, direct data sales, or other unspecified purposes, and asserts that Defendants retained "monetary benefits" and "economic gains." *Id.* ¶¶ 132, 134–36. In addition, Plaintiff alleges that following her visit to the Website, she began receiving targeted advertisements for Jewelers Mutual ***and similar products*** on her social media accounts which, she alleges upon information and belief, were a result of the Code Vendors capturing her information during her Website visit. *Id.* ¶ 56. Under either Pennsylvania or Wisconsin law, Plaintiff fails to state a claim for unjust enrichment because she does not plausibly allege that Defendants used her intercepted Website communications and data to obtain a financial benefit or that any benefit Defendants retained was inequitable under the circumstances.

To state a claim for unjust enrichment in Pennsylvania, a plaintiff must plausibly allege three elements: (1) a benefit plaintiff conferred on the defendant; (2) defendant's appreciation of the benefit; and (3) acceptance and retention of the benefit under circumstances that would make

it inequitable for defendant to retain without paying plaintiff its value. *See Wolf v. Wolf*, 356 Pa. Super. 365, 374, 514 A.2d 901, 906 (1986). Unjust enrichment under Wisconsin law requires substantially the same elements. *Seegers v. Sprague*, 70 Wis. 2d 997, 1004, 236 N.W.2d 227, 230 (1975).

The benefit to a defendant must be an economic one; the alleged retention of a plaintiff's data and communications alone cannot establish a claim for unjust enrichment. *See Giasson v. MRA - Mgmt. Ass'n, Inc.*, 777 F. Supp. 3d 913, 940 (E.D. Wis. 2025) (determining that the use of plaintiff's PII to facilitate business operations alone does not constitute a benefit to support a claim for unjust enrichment); *Tignor v. Dollar Energy Fund, Inc.*, 745 F. Supp. 3d 189, 206 (W.D. Pa. 2024) (receipt of the plaintiff's PII does not constitute a cognizable benefit absent facts showing that the defendant commoditized or otherwise profited from the PII). Accordingly, to the extent Plaintiff's unjust enrichment claim is premised on Defendants' alleged collection of her Website communications and consumer data alone, such claim fails.

Moreover, Plaintiff cannot satisfy the benefit appreciation element through her conclusory assertions that Defendants obtained monetary benefits and economic gains through the collection of Plaintiff's data. "[W]here the complaint lacks factual allegations showing how a defendant 'reaped monetary benefits or otherwise profited' from holding plaintiffs' PII, 'vague allegations that [the defendant] collects information for 'commercial gain' are insufficient to state a claim for unjust enrichment." *In re NCB Management Services, Inc. v. Data Breach Litigation*, 748 F.Supp.3d 262, 278 (E.D. Pa. 2024) (dismissing plaintiffs' unjust enrichment claim because plaintiff failed to plead how defendant profited from possessing their information); *Blitz v. Monsanto Co.*, 317 F. Supp. 3d 1042, 1055–56 (W.D. Wis. 2018) (plaintiff's "bald assertion" that defendants were unjustly enriched through product sales was insufficient to state a claim for unjust

enrichment). Here, Plaintiff alleges that Defendants *could* profit from retaining her Website communications and data but pleads no facts showing that they actually did so. *See* FAC ¶ 132. Although Plaintiff alleges that she began receiving targeted advertisements on her social media accounts after visiting the Website, she does not allege facts showing that Defendants used her Website communications and data to place those advertisements or that the advertisements generated revenue, reduced Defendants' advertising costs, or provided Defendants with any other appreciable economic benefit. *See* FAC ¶ 56, 132. Her assertions that Defendants obtained an appreciable economic benefit are conclusory and insufficient to state a claim for unjust enrichment.

Finally, Plaintiff's unjust enrichment claim fails under either Wisconsin or Pennsylvania law because she has not plausibly alleged that Defendants retained a benefit under inequitable circumstances. Where, as here, the only alleged basis for inequity is the same conduct underlying a statutory or tort claim and that claim fails, Plaintiff cannot establish that Defendants' retention of any benefit derived from that conduct would be inequitable. *See Fail-Safe, LLC v. A.O. Smith Corp.*, 674 F.3d 889, 894–95 (7th Cir. 2012) (holding that the defendant was not unjustly enriched by using information the plaintiff claimed constituted trade secrets where the plaintiff failed to establish that the information was entitled to trade-secret protection); *Loeb v. Champion Petfoods USA Inc.*, 359 F. Supp. 3d 597, 605–06 (E.D. Wis. 2019) (dismissing plaintiff's unjust enrichment claim where she failed to establish that the same conduct violated the only statutory claim asserted, the Wisconsin Deceptive Trade Practices Act); *Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 493 (E.D. Pa. 2016) ("[w]here the unjust enrichment claim rests on the same improper conduct as the underlying tort claim, the unjust enrichment claim will rise or fall with the underlying tort claim."); *Steamfitters Loc. Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 936–37 (3d Cir. 1999) (rejecting an unjust enrichment claim based on the same alleged wrongdoing

after concluding that the plaintiffs could not maintain their underlying tort claims). The only alleged basis for inequity is Defendants' alleged misrepresentation of Plaintiff's ability to limit the collection of her Website communications and the resulting interception and use of that information—the same conduct underlying her wiretap and intrusion upon seclusion claims. As discussed in Section II(C), *supra*, Plaintiff has not plausibly alleged a cognizable intrusion upon seclusion claim, and, as discussed below, Plaintiff has not and cannot state a cognizable wiretap claim. As a result, Plaintiff's unjust enrichment claim fails.

### E. Plaintiff Fails to State a Valid Wiretap Claim

Plaintiff fails to state a claim under PWESCA because the FAC does not plausibly allege the essential elements of such a claim. Specifically, Plaintiff fails to plausibly allege that Defendants intercepted the contents of any communication, that Defendants used a qualifying "device" within the meaning of the statute, or that any interception occurred contemporaneously with the transmission of the communication. Each of these deficiencies independently requires dismissal of Plaintiff's PWESCA claim.

#### 1. Plaintiff's Interactions With the Website Do Not Constitute "Contents" of Communications

Plaintiff fails to allege a wiretap claim because she has not plausibly alleged that the Code Vendors intercepted the "contents" of any communication. Plaintiff alleges that the Code Vendors collected page views, URLs visited, clicks, scrolling activity, text entered on the Website which conveyed information about herself, form submissions, her approximate geolocation, and information about her browsing device. As discussed below, courts routinely hold that page views, URLs, clicks, scrolling activity, browsing device, and geolocation information do not constitute the contents of a communication. And while text entries, in some circumstances may constitute contents, Plaintiff ***does not identify*** what she entered on the Website.  Her generalized allegation

that the text conveyed information about herself is insufficient to permit the Court to determine whether any contents were intercepted.

PWESCA prohibits the interception of an electronic communication without prior consent. "Intercept" is defined as the "[a]ural or other acquisition of the *contents* of any wire, electronic or oral communication through the use of any electronic, mechanical or other device." 18 Pa.C.S.A § 5702 (emphasis added). "Contents" is defined as "any information concerning the substance, purport, or meaning of that communication." 18 Pa.C.S.A § 5702. "Contents" of a communication means "the substance that the speaker intended to communicate and does not include automatically generated 'record' data." *Vasil v. Kiip, Inc.*, No. 16-CV-09937, 2018 WL 1156328, at *2 (N.D. Ill. Mar. 5, 2018); *Cook*, 689 F. Supp. 3d at 68; *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014); *Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318, 1321 (S.D. Fla. 2021). Record data is information pertaining to a customer, rather than the "substance, purport, or meaning" of a communication. *Goldstein*, 559 F. Supp. 3d at 1321. "Thus, determining whether a plaintiff has adequately pled a violation of the [the Act] comes down to deciding whether the acquired information can best be characterized as either 'record information' or 'the message conveyed by the communication.'" *Cook*, 689 F. Supp. 3d at 68.

Page views, URLs visited, clicks, and scrolling activity constitute record information because they reflect how a user navigates a website and are not the substance of any message communicated by the user. *In re TikTok, Inc. In-App Browser Priv. Litig.*, No. 24 C 2110, 2024 WL 4367849, at *11 (N.D. Ill. Oct. 1, 2024) (explaining that button presses, taps, pauses, and scrolling activity do not reveal the substance of a communication); *In re Zynga*, 750 F.3d at 1107 (determining that the address of a webpage a user views does not fall within the definition of contents); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (concluding

that the recording of mouse clicks, pages viewed, shipping and billing information, IP address, browser type, and the date and time of a user's visit do not constitute contents); *Goldstein.*, 559 F. Supp. 3d at 1320-1231 (mouse movements, clicks, and pages and content viewed while on defendant's website "do not convey the substance of any communication."). Although a URL may constitute contents when it reveals a search query or other substantive information, Plaintiff does not allege that any URL intercepted contained such information. *See Cook v. GameStop, Inc.*, 689 F. Supp. at 70-71.

The remaining information likewise does not constitute contents. Information about Plaintiff's browsing device identifies the means by which she accessed the Website, not the substance of anything she communicated. *See Yoon*, 549 F. Supp. at 1082. Similarly, geolocation data does not concern the substance, purport, or meaning of a communication. *See Cousineau v. Microsoft Corp*., 992 F. Supp. 2d 1116, 1127 (W.D. Wash. 2012).

Plaintiff also alleges that the Code Vendors captured form submissions and text that conveyed information about herself. But she never identifies what text she entered. Without that information, the Court is left to speculate whether the allegedly intercepted text concerned the substance, purport, or meaning of a communication. *See Cook v. GameStop, Inc.*, 689 F. Supp. at 70-71 (concluding that the plaintiff failed to plead the interception of contents where she alleged that her keystrokes were captured but did not identify which keystrokes she entered); *Murphy v. Thomas Jefferson University Hospitals, Inc.*, No. CV 22-4674, 2023 WL 7017734, at *3 (E.D. Pa. Oct. 10, 2023) (dismissing wiretap claim where plaintiffs alleged the interception of plaintiffs' healthcare information but failed to identify the specific communications intercepted) .

Because the interactions allegedly captured on the Website do not constitute "contents" of a communication, Plaintiff fails to state a claim under PWESCA.

2. <u>Session Replay Software Is Not a Device</u>

Defendants' alleged use of the Code on the Website is not actionable under PWESCA because the Code is not a "device." PWESCA defines "electronic, mechanical, or other device" as "any device or apparatus, including, but not limited to, an induction coil or a telecommunication identification interception device, that can be used to intercept a wire, electronic, or oral communication" subject to three exceptions (which are not at issue here). 18 Pa.C.S.A. § 5702. And the Court must interpret the term "device" according to its common and approved usage. *Com. v. Hart*, 611 Pa. 531, 547 (2011); *State ex rel. Kalal v. Cir. Ct. for Dane Cnty.*, 2004 WI 58, ¶ 45 (interpreting the same "device" component of the analogous Wisconsin wiretapping statute).

"Device" is defined as a "piece of ***equipment*** or mechanism designed to serve a special purpose or perform a special function." Device, *Merriam-Webster Dictionary*, www.merriam-webster.com/dictionary/device (emphasis added). Consistent with this meaning and common and approved usage, courts analyzing wiretapping claims have concluded that a "device" is something tangible and does not include software. *See Mason v. Machine Zone, Inc.*, 140 F. Supp. 3d 457, 462-463 (D. Md. 2015) (determining that the "most natural reading" of a "device" is something like a "piece of equipment"); *Potter v. Havlicek*, No. 3:06-CV-211, 2008 WL 2556723, at *8 (S.D. Ohio June 23, 2008) (holding that software is not a "device" capable of intercepting communications because it is not a "piece of equipment" and must be installed on a device in order to intercept communications); *Jacome v. Spirit Airlines Inc.*, No. 2021-000947-CA-01, 2021 WL 3087860, at *5 (Fla.Cir.Ct. June 17, 2021) (holding that session replay software that allegedly intercepted plaintiff's communications does not constitute a device under Florida's wiretap act); *Cardoso v. Whirlpool Corp.*, No. 21-CV-60784-WPD, 2021 WL 2820822, at *2 (S.D. Fla. July 6, 2021) (same); *Goldstein v. Luxottica of Am., Inc.*, No. 21-80546-CIV, 2021 WL 4093295, at *2

(S.D. Fla. Aug. 23, 2021) (same).

Because the Code is not a "device" under PWESCA, and Plaintiff fails to allege any other device the Code Vendors used to allegedly intercept her communications with Defendants, Plaintiff fails to allege an essential element of PWESCA and, therefore, fails to state a valid wiretapping claim.

3. Plaintiff Has Not Alleged an Interception

Plaintiff also fails to plausibly allege that the Code Vendors intercepted her communications within the meaning of PWESCA. Under the statute, "intercept" is defined as the '[a]ural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 Pa. C.S.A. § 5702. Courts interpreting PWESCA have held that a communication is intercepted only if it is acquired contemporaneously with its transmission. *Commonwealth v. Cole*, 2017 PA Super 211, 167 A.3d 49, 62 (2017). Thus, where a communication is first delivered to its intended destination and then later accessed or forwarded from storage, there is no interception under the statute. *See Com. v. Proetto*, 2001 PA Super 95, ¶ 16, 771 (2001), *aff'd*, 575 Pa. 511 (2003).

Plaintiff does not plead facts demonstrating that her electronic communications were intercepted contemporaneously with any transmission. Although the FAC repeatedly asserts that the Code Vendors acquired Plaintiff's communications in "real time" and "contemporaneously" with their transmission, those are legal conclusions. *See* FAC ¶¶ 22, 30, 91. The FAC alleges that Defendants embedded the Code on its Website and that the Code loads into the user's browser. *See* FAC ¶ 20, 29. From those general allegations, Plaintiff jumps to the conclusion that every subsequent communication is intercepted contemporaneously with its transmission. But just "'[u]sing the word 'intercept' repeatedly is simply not enough without the addition of facts that

make it plausible [Defendants are] intercepting [Plaintiff's] data in transit." *Rodriguez v. Google, LLC*, No. 20-CV-04688-RS, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022); *see also, United States v. Szymuszkiewicz,* 622 F.3d 701, 703 (7th Cir. 2010), as amended (Nov. 29, 2010) (interpreting the analogous "contemporaneous interception" requirement in the federal wiretapping act to require that something be intercepted "in flight"); *Sisti v. Bosley Inc.*, No. 2:25-CV-10669-JFW-DFM, 2026 WL 1223927, at *6 (C.D. Cal. Apr. 27, 2026) (dismissing federal and state wiretapping claims for failure to allege sufficient facts demonstrating interception while information in transit); *Adler v. Community.com*, 2021 WL 4805435, at *4 (C.D. Cal. Aug. 2, 2021) (dismissing a wiretap claim because plaintiff did not state a "plausible allegation that Defendant acted to learn the contents of the message while they were, in a technical sense, in transit or in the process of being received"); *Torres v. Prudential Financial, Inc.*, 2025 WL 1135088, at *5 (N.D. Cal. Apr. 17, 2025) (dismissing wiretapping claim for failure to sufficiently allege how third parties could have intercepted and read the contents of communications while they were still in transit). Conclusory allegations regarding this "interception" element, like those Plaintiff makes here, fail to meet the standard that "all aspects of a complaint must rest on 'well-pleaded factual allegations' and not 'mere conclusory statements'." *Finkelman v. Nat'l Football League*, 810 F.3d 187, 194 (3d Cir. 2016) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009)). Plaintiff's failure to allege an "interception" constitutes a separate basis for dismissal of the PWESCA claim.

4. <u>Given a Legitimate Conflict Between the Consent Portions of PWESCA and the Analogous Wisconsin Electronic Surveillance Control Law ("WESCL"), the Single-Party Consent Component of WESCL Should Apply Resulting in Dismissal of Plaintiff's Wiretapping Claim.</u>

While Plaintiff brings her wiretapping claim under PWESCA, WESCL and PWESCA are

materially the same in almost every aspect.[4] There is one critical difference, however, between WESCL and PWESCA: WESCL has a ***one-party consent exception*** from liability under which one of the parties to the communication has given prior consent. Wis. Stat. Ann. § 968.31(c) ("[i]t is **not unlawful** . .. **where one of the parties** to the communication **has given prior consent** . . .") (emphasis added).[5] As discussed in Section II(B) *supra*, given this difference in the laws, Wisconsin's conflict of laws principles require an analysis of which state law should apply to the wiretap claim. *See, e.g., Oregon Potato Co. v. Kerry Inc.*, 575 F. Supp. 3d 1064, 1083 (W.D. Wis. 2021) (conducting choice of law analysis to determine whether Wisconsin or Washington law governed plaintiff's statutory consumer protection claim).

Wisconsin law should apply to the wiretap claim for all the same reasons why Wisconsin law should apply to Plaintiff's common law claims. *See* Section II(B), *supra*. Wisconsin law provides a clear exception to a wiretapping violation where, as here, defendants were the intended recipients of plaintiffs' communications.[6] Courts around the country have routinely applied one-party consent exception to claims alleging wiretap violations arising from website tracking activities. *See e.g., In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 142 (3d Cir. 2015) (holding that defendants were protected by the Wiretap Act's party exception because they were intended recipients of the communications at issue); *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1065 (C.D. Cal. 2024) (determining that defendant was the intended recipient where plaintiffs alleged the defendant employed tracking technology to intercept

[4] WESCL, like PWESCA, prohibits anyone from, inter alia, intentionally intercepting or procuring a person to intercept any wire, electronic, or oral communication. *See* Wis. Stat. Ann. § 968.31(a)-(e).

[5] PWESCA, by contrast, has a dual-party consent exception.

[6] Plaintiff should not get the "benefit" of alleging a violation of PWESCA in a Wisconsin federal court to avoid the one-party consent exception that Wisconsin made clear it intended to be the law of Wisconsin with regards to all wiretapping conduct when it codified WESCL.

communications they transmitted to defendant through their use of the website); *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 718 (D. Minn. 2023) (same).

Plaintiff has not established all the elements of the wiretapping claim, therefore that claim should be dismissed with prejudice. The Court should apply Wisconsin law to Plaintiff's wiretap claim and dismiss the same pursuant to a one-party-consent exception.

## CONCLUSION

For all the reasons set forth above, the First Amended Complaint should be dismissed.


**GORDON REES SCULLY MANSUKHANI, LLP**

By:*/s/ Jennifer Williams*
Jennifer Williams
*Counsel for Defendants*
500 West Silver Spring Dr., K270
Glendale, WI 53217
(414) 488-3999

-and-

Alexandra Sandler, Esq. (*pro hac vice forthcoming)*
Brian E. Middlebrook, Esq. (*pro hac vice forthcoming)*
**Gordon Rees Scully Mansukhani, LLP**
One Battery Park Plaza, 28th Floor
New York, NY 10004
212-269-5500

Justin Holmes, Esq. (*pro hac vice forthcoming)*
**Gordon Rees Scully Mansukhani, LLP**
Three Logan Square
1717 Arch St., STE 610
Philadelphia, PA 19103
212-453-0787